FRIENDS FOR ALL CHILDREN, INC., as legal guardian and next friend of the named 150 infant individuals, et al., Plaintiffs,

v.

LOCKHEED AIRCRAFT CORPORATION, Defendant and Third-Party Plaintiff,

v.

The UNITED STATES of America, Third-Party Defendant.

Civ. A. No. 76–0544.

United States District Court, District of Columbia.

Jan. 27, 1982.

Charles R. Work and Peabody, Lambert & Meyers, Washington, D. C., for plaintiffs.

Carroll E. Dubuc and Haight, Gardner, Poor & Havens, Washington, D. C., for defendant Lockheed.

James P. Piper, U. S. Dept. of Justice, Washington, D. C., for United States, third-party defendant.

## MEMORANDUM

OBERDORFER, District Judge.

The pending motion requires a decision on the amount of compensation owed by defendant Lockheed Aircraft Corporation and the United States, as third-party defendant, to Charles Work, Esq. and his law firm for their services from February 23, 1978 through May 18, 1981, totaling 3,992.5 lawyer hours and 1,449.8 non-lawyer hours, as guardian *ad litem* for 150 infants. The infants were orphaned in Viet Nam and cared for by Friends For All Children ("FFAC"), a non-profit Colorado corporation which operated orphanages in Viet Nam, and arranged for adoption of its

wards outside of Viet Nam. Just before the end of the Viet Nam War, then President Ford ordered the Air Force to send a Lockheed-manufactured C–5A to Viet Nam to evacuate to the United States several hundred orphans scheduled by FFAC for adoption in the United States and Western Europe. Shortly after take-off of the C–5A from Saigon with 327 passengers, including 258 orphans, the rear cargo door broke off. There was an explosive decompression at about 23,000 feet altitude, followed about 10 minutes later by a crash landing in a rice paddy on the approaches to the military airport at Saigon. One hundred forty-four persons including adult crew personnel and escorts for the orphans died; 150 orphans survived. Most of those killed were traveling in the cargo compartment of the C–5A, while most of the survivors were in the troop compartment, which held the majority of the orphans being evacuated.

On April 2, 1976, FFAC filed this suit as legal representative of the 150 surviving infants. While pretrial proceedings were in an early stage, the Panel for Multi-District Litigation transferred here several other cases growing out of the crash brought by and on behalf of U.S. citizens who were aboard the C–5A against Lockheed in federal courts around the country.

Until February 1978, while discovery proceeded concerning liability, the Court and defendant's counsel dealt primarily with the cases involving adult U.S. citizens and gradually settled all except three which were remanded to the Southern District of New York for trial. These infant cases first became active, independent of the U.S. citizen cases, as a result of discovery disputes and defendant's attacks on FFAC's standing and credentials. Although defendant explained the lack of settlement of infant cases, in part at least, as resulting from FFAC's inability to effect settlements binding on the infants it represented, no one suggested the appointment of a guardian *ad litem* to represent the infant plaintiffs,

and the idea did not occur to the Court. There being no guardian *ad litem*, in February 1978 FFAC's counsel, in order to perfect the claims of the infants asserted protectively for them by FFAC, wrote to each parent of an adoptive child that FFAC had filed the suit on its own for the benefit of the orphans. The letter suggested that the adoptive plaintiffs now substitute themselves for FFAC as legal representatives in the present cases. The letter further suggested that each plaintiff retain FFAC's lawyer, without thoroughly relating the costs and risks involved or suggesting the possibility of alternative counsel. One of the adoptive parents, Yul Brynner (then living in Paris) communicated with the Justice Department and denounced the FFAC lawyers for suggesting that Brynner's adopted child might be ill and for filing a lawsuit for the child's benefit without parental consent. Thereafter, the United States moved to disqualify FFAC's lawyers for improper solicitation and Lockheed moved for summary judgment dismissing the suits because FFAC lacked capacity to represent the infants. Again, there was no suggestion of a guardian *ad litem*.

The Brynner letter, the United States' motion to disqualify plaintiffs' counsel, and the motion for summary judgment raised novel and serious questions. The standards governing lawyers' advertising and communicating with clients were in a state of flux. *See, e.g., Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); *In re Primus*, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). The District of Columbia Bar was in the process of developing new rules on the subject to reflect recent Supreme Court decisions. Charles R. Work was recently President of the D.C. Bar and closely involved in adopting standards governing lawyer advertising and solicitation. He had a good reputation for ability and was well regarded by other judges of this Court as a result of his services as Assistant United States Attorney[1]. Accordingly, the Court appointed Mr. Work

---

1. Defendant itself complained that the guardian *ad litem* inappropriately supplemented legal services rendered by plaintiffs' counsel, and

referred to the guardian *ad litem* as "a distinguished lawyer and a prestigious law firm," Petition for Rehearing and Clarification, p. 4.

as *amicus curiae* to consider the various complications generated by the unusual stance of plaintiffs, their representatives and their counsel, and to advise whether the complexities could and should be resolved by the appointment of a guardian *ad litem.*

In due course, Mr. Work advised that in his opinion communication from FFAC counsel to the adoptive parents did not violate any professional standard and was appropriate in these circumstances, but that appointment of a guardian *ad litem* was indicated and would, in effect, moot the issues raised by Lockheed's summary judgment motion. After receiving briefs from the parties and conducting a hearing on the amicus' recommendations, the Court denied the motion for summary judgment and, over vigorous objections by defendant, appointed Mr. Work and his firm as guardians *ad litem.*

The guardian's first task was to design and send to adoptive and *de facto* parents of infants a thorough notice of their claims, and a full appraisal of the medical and legal circumstances of the infants who had survived the crash. The Brynner letter and changing professional norms sensitized all involved to the delicacy of the communication, and the necessity that it be complete, candid, and, where appropriate, followed up by personal conferences between the guardian *ad litem* and the adoptive parents, here and abroad. This was no ordinary commission as guardian *ad litem.* And the subsequent responsibilities for 150 wards, scattered across the United States and Europe, and involved in a bitterly-contested, complex litigation, have also been extraordinary for a guardian *ad litem.*

Thereafter, the guardian submitted to the parties and the Court several drafts of a communication. The hearings on those drafts quickly disclosed an underlying concern of the defendant (or at least its insur-ance carrier). The defendant endeavored to shape the communication to individual parents and the resulting arrangements so that defendant could deal directly with each plaintiff or potential plaintiff.[2]

After defendant had sought unsuccessfully to persuade the Court of Appeals to prohibit or mandamus this Court on these issues, and following lengthy negotiations, the parties agreed upon an interim settlement in which Lockheed agreed not to contest its liability for damages proximately resulting from the crash in exchange for plaintiffs' agreement not to seek punitive damages. Defendant also agreed to pay $5,000 for each child who filed an amended complaint, with the fund so created being used for medical examinations and expenses and for litigation expenses. Finally, defendant agreed to pay 30% of any judgment without awaiting appeal. *See* Stipulation of September 14, 1979.

The cases of three infants were then selected as "bellwether" cases and were tried in the Spring of 1980. Following a retrial of one of the cases in January 1981, the cases were reviewed in expedited appeals, and sizeable judgments for the three infant plaintiffs were reversed and remanded for new trials, the plaintiffs retaining 30% of each judgment pursuant to the 1979 settlement. *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835 (D.C.Cir.1981).[3]

After the first three trials and before the judgment of the Court of Appeals, this Court conducted hearings on a Motion for a Preliminary Injunction, filed by plaintiffs and their guardian *ad litem*, to require the defendants to establish a fund to provide for medical needs of the infants while their suits were being litigated. This motion was held under advisement while the parties negotiated and tentatively agreed upon an interim trust to serve this purpose. This agreement was, however, subject to approv-

---

**2.** Defendant complained to the Court of Appeals that the guardian *ad litem* here is not rendering "the services traditionally rendered by a guardian *ad litem...*" but is rendering "services intended and designed to increase the number of plaintiffs and to reduce Lockheed's chances of success in the litigation."

**3.** A petition for certiorari in *Schneider* was filed by defendant on January 7, 1982. This, of course, does not affect this Court's duty to decide the instant motion in this case which was filed on July 22, 1981.

al by higher level Justice Department officials. The settlement was only recently rejected by these officials.

This Court's Calendar Committee then established a procedure whereby, following completion of discovery, the remaining cases could be reassigned randomly to other judges of this Court. Such reassignments were completed and several additional cases were tried and three settled in the Winter and Spring of 1981. All of the judgments based on trials had to be vacated, however, after the Court of Appeals' decision in May 1981, so that only the final judgments in the three settled cases remained standing. In view of the number of cases remaining to be tried and the need for coordination between various judges over trial schedules, this Court issued an *en banc* Order on July 31, 1981, which provided that these cases would be tried one per month as long as necessary, beginning January 1982 with no judge trying more than one case per year. The retrial of one of the three cases reversed by the Court of Appeals was scheduled for the Fall of 1981, but that case was settled, bringing to four the number of cases that were finally resolved as of January 1, 1982, and two in which 30% of a judgment for plaintiff was final.

Also during the Fall of 1981, there were substantial discussions of a global settlement, also involving a trust, for all cases of infants who were adopted by parents residing in the United States. In addition, the defendant and the third-party defendant moved to dismiss the cases of the infants residing overseas on the basis of *forum non conveniens*, but this motion was denied by this Court. *See* Memorandum of October 2, 1981.

Since his appointment, the guardian *ad litem* has carried out his duties by, *inter alia*, (1) contacting parents of individual plaintiffs, both domestic and foreign, about their participation in these cases, both by the carefully designed notice procedure, and in some cases by personal visit or telephone; (2) arranging and supervising medical examinations to determine the severity of injuries for purposes of the pending claims, the need for treatment of individual plaintiffs, and the prospect of diagnosis and treatment for the plaintiffs as a group having similar medical problems and similar medical and educational requirements; (3) administering a Guardian's Fund, originally established by the defendant's payment of $5,000 to each individual plaintiff who has filed an amended complaint, pursuant to the stipulation entered into on September 14, 1979, and thereafter supplemented with sums paid out of amounts paid into Court in cases which have settled or in which amounts were paid in partial satisfaction of judgments which were later reversed on appeal. These funds have been used both for the conducting of medical examinations and for the provision of litigation expenses. The guardian has also monitored the performance of plaintiffs' counsel and, where necessary, conferred with counsel on strategy and settlement posture. Finally, the guardian has taken an active role in settlement negotiations, both in individual cases and on a global basis.

As one example of the complexity of the tasks of the guardian, there were lengthy negotiations between plaintiffs and both defendant and third-party defendant which led to a partial settlement in which Lockheed agreed not to contest liability in exchange for plaintiffs' agreement not to seek punitive damages. Moreover, there were substantial discussions in 1980 about the possibility of a second partial settlement to provide medical treatment for the immediate needs of the infants while the cases were being litigated. This involved substantial research on the methods of administering such a settlement, including the establishment of a fluid trust which could be drawn on by all of the infants as they needed the treatments available. There were numerous questions about the mechanics of such a trust, its tax treatment, and possibly even its legality. As indicated, agreement on the issue was reached by counsel, but the settlement documents were held in abeyance for about 15 months and finally rejected by third-party defendant. Clearly these negotiations required substantial financial and legal work which tran-

scended the litigation and involved difficult decisions balancing the interests of those plaintiffs with more immediate and manifest medical needs against those with less pressing or less obvious medical problems, as well as balancing the needs of the foreign and domestic plaintiffs. And, of course, the guardian had to participate in settlement negotiations in individual cases as well, in many instances on the eve of trial, or even, as in the *Zimmerly* case, during trial. This required a thorough and current familiarity with the facts of the individual cases and required substantial time, professional skill and judgment.

The guardian now seeks compensation for his work prior to May 17, 1981, the date established as the cut-off point by the Court of Appeals' opinion in *Schneider v. Lockheed Aircraft Corp., supra*. The awarding of fees for the guardian *ad litem* as costs in these actions was challenged in that appeal, and the Court of Appeals specifically held that this Court "did not abuse its discretion in taxing costs against Lockheed for the guardian *ad litem* services performed up to and through *Schneider, Marchetti,* and *Zimmerly II.*" *Id.* at 855. It is clear from the foregoing that he has devoted substantial time and resources to this case, and is necessarily entitled to compensation from some source. The issue is whether the fees to which the guardian is undoubtedly entitled are to be paid by defendant or through some mechanism not yet identified, by plaintiffs.

■ The Court concludes, as the Court of Appeals indicated, that defendant is primarily responsible for compensating the guardian. These infants were about one year old at the time of the crash. They require continuing examination and protection because they were exposed, by the decompression and the crash, to an illness which may not immediately manifest itself in symptoms, but rather may appear most vividly and have its most deleterious effects years after the exposure of the infant to the forces which caused it. The defendant

has agreed not to contest its liability for damages proximately caused by the crash. The cost of the services of a guardian is one such liability. At the very least a defendant who does not contest liability for a crash of the violence of this one may not contest its responsibility for the cost of monitoring infant passengers to determine whether they have been injured and, if so, what their injuries are, and to balance and protect the claims of those who suffer the effects of the crash either now or in the future.

■ Actually, a guardian should have been appointed at the beginning of this litigation. *See, e.g., Franz v. Buder*, 38 F.2d 605 (8th Cir. 1930) (under Equity Rule 70, from which Fed.R.Civ.P. 17(c) is derived). Defendant's expense could thus have been much greater. In any air crash as violent as this one, which carried 144 passengers to their deaths, it should be clear that one proximate result of the crash is that any infants who are aboard the plane require a guardian *ad litem* to protect their interests. The crash made it necessary to appoint a guardian *ad litem* to monitor their condition, to make sure whether they have or have not been injured, and to protect their legal interests. Fed.R.Civ.P. 17(c) provides that "the court shall appoint a guardian *ad litem* . . . or shall make such other order as it deems proper for the protection of the infant or incompetent person." The guardian *ad litem* is an officer of the Court whose appointment was made necessary by the crash and the ensuing litigation initiated for the infants by FFAC. *Franz v. Buder*, 38 F.2d 605 (8th Cir. 1930); *see also Panitsch v. Wisconsin*, 451 F.Supp. 132 (E.D.Wis.1978).

■ The authority of the Court to award a reasonable fee to the guardian *ad litem* is implied from the power to appoint him, a power which Fed.R.Civ.P. 17(c) undoubtedly gives the Court. This fee may be properly taxed as costs, since it is an expenditure necessary to the performance of

the judicial function. *Hoffman v. Morgan*, 206 Okl. 567, 245 F.2d 67 (1952). This practice of taxing the fees of the guardian *ad litem* as costs is not only supported by federal precedents such as *Franz* and *Panitsch, supra*, but is also followed in a great many states. *See generally* Annotation, *Allowance of Fees for Guardian Ad Litem Appointed for Infant Defendant as Costs*, 30 A.L.R.2d 1148 (1953). Such a practice is consistent with the "American rule" that compensation for prevailing counsel is not normally taxable as a cost. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Rather, this expense is more like the fee paid to an auditor to which a case is referred for a preliminary hearing, which was held to be taxable as costs in *In re Peterson*, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920). Thus, a defendant who admits liability for the crash necessarily admits responsibility for the costs of the guardian *ad litem* made necessary by that crash.

In addition, this Court, in its Comprehensive Pretrial Order entered October 30, 1980, held that as a result of Lockheed's agreement not to contest liability, each individual infant is to be deemed a prevailing party. While portions of this Court's Comprehensive Pretrial Order were overturned on appeal, the ruling that each plaintiff is a prevailing party was left undisturbed, at least with respect to the entitlement of the guardian *ad litem* to compensation for his services through the date of the Court of Appeals' decision. It is now settled by the decision of the Court of Appeals in *Schneider, supra*, that the compensation for the guardian *ad litem* is properly taxable as a cost. Since plaintiffs are all prevailing parties, defendants are liable for these costs. This would be true even if a plaintiff had recovered only nominal damages. *See Chesapeake and Potomac Tel. Co. v. Clay*, 90 U.S.App.D.C. 206, 194 F.2d 888 (1952); *Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993 (5th Cir. 1976). But in these cases, each plaintiff has recovered

$5,000 as a result of the aforementioned stipulation, and is thus *a fortiori* a prevailing party and entitled to costs, whether or not he recovers further amounts at trial. Plaintiffs have also secured the defendant's agreement to pay 30% of any judgment without awaiting appeal; several plaintiffs have already recovered these amounts. Several others have gained substantial recoveries by settlement.

Lockheed maintains that the stipulation in which it agreed not to contest liability was not a one-sided victory for plaintiffs. It is true that plaintiffs in return gave up their claim for punitive damages; however, it is settled that plaintiffs need not prevail on all of their claims to be prevailing parties. *See Chesapeake and Potomac Tel. Co. v. Clay, supra*; 10 C. Wright & A. Miller, Federal Practice and Procedure § 2667 n.8 (1973) and cases cited therein.

The Supreme Court has recently reaffirmed this proposition in *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Though the Court reversed the granting of interlocutory attorney's fees in that case, on the ground that plaintiffs had not yet been determined to be prevailing parties, it reiterated that such awards are appropriate where the plaintiff has established his entitlement to some relief. *Id.* at 757, 100 S.Ct. at 1989. Plaintiffs here have done more; they have actually received relief in the form of the $5,000 payment and the agreement to pay 30% of any judgment without appeal, the payment of such amounts to some plaintiffs after extensive jury trials, and by substantial awards by settlement.

Although the stipulation of September 14, 1979, ¶ 13(d), reserved the issue of whether guardian's fees were payable as costs or out of the recovery or in some other manner, this merely operates to reserve the issue of whether the fees are properly chargeable as costs, not the issue of who is liable for costs. The issue of whether guardian's fees are properly chargeable as

costs has been resolved adversely to defendant by the Court of Appeals, and in view of defendant's agreement not to contest liability for damages proximately caused by the crash, it cannot now dispute that plaintiffs are the prevailing party. Accordingly, the guardian is entitled to summary judgment against defendant for the amount of his reasonably incurred guardian's fees. There remains for consideration the amount of these fees.

In establishing the amount of fees to which the guardian is entitled, this Court will adopt the method established in *Copeland v. Marshall*, 205 U.S.App.D.C. 390, 641 F.2d 880 (1980), for calculation of attorneys' fees. This decision contemplates the Court first determining a "lodestar" fee based upon the number of hours spent and the normal market value of those services. The guardian has submitted an affidavit on the number of hours he has spent on these cases since his appointment and through May 19, 1981. He claims to have rendered services, the time-charge for which totalled $487,276.50, and to have incurred expenses of $45,935.91. He has already been paid a total of $156,278.71, which leaves a balance of $376,933.70. His affidavit includes biographies of all lawyers who worked on the case, as well as a statement that the rates at which compensation is sought are the normal billing rates for the respective members of the firm. Defendant has not challenged the rates. The Court finds that they are reasonable and constitute the market value of the services performed. Accordingly, these rates, multiplied by the number of hours properly allowable, will constitute the "lodestar" for purposes of determining the amount owed under *Copeland v. Marshall, supra.* The guardian does not now seek an upward adjustment of the lodestar for contingency, delay or similar factors, and the Court specifically finds that no downward adjustment is appropriate. These determinations are without prejudice to further interim and final computation as this complex matter unfolds.

There remain at present two other issues: whether any of the hours spent and expenses incurred were spent unreasonably or on matters that are more properly the responsibility of litigation counsel than of a guardian, and whether there should be subtracted from the amounts found owing amounts that have been or are to be set aside from the judgments in three cases which were settled prior to May 18, 1981.

The guardian has divided the time spent in this case into five categories: court appearances, communications with the families of the infant plaintiffs, settlement negotiations, administration of the Guardian's Fund, and legal issues. There can be little serious dispute as to the appropriateness of the first four of these categories of expenses. The guardian spent substantial time studying and perfecting the Court's suggestion that a trust mechanism might best accommodate the varying medical needs of individual plaintiffs injured in the crash. *See, e.g.*, Memorandum of May 30, 1980. Many of the court appearances of the guardian were at the specific request of this or other courts, and related to conferences about settlement negotiations and scheduling, important responsibilities of the guardian in this case. Communication with the families, negotiation of settlements and administration of the Guardian's Fund are similarly at the core of the duties of a guardian *ad litem*.

Defendant objects to the guardian's three trips to Europe to meet with parents of infants, principally because it views these expenses as undertaken primarily to promote the plaintiffs' chances of success in this litigation. However, the guardian can quite properly conclude that the interests of each infant who was on board the C–5A are best served by his joining in this suit, because, among other things, the consequences of the crash to each infant may not be apparent immediately. The guardian's efforts in this respect promote the interests of all the infants. The Court finds that these expenses are reasonable and properly recoverable.

■ Time spent researching legal issues requires some discussion. Defendant has claimed that no time spent on legal issues is recoverable under *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). That position was rejected by the Court of Appeals in *Schneider v. Lockheed, supra.* But time spent on legal research that is more properly the role of litigation counsel should not be recoverable as a cost. *See, e.g., Franz v. Buder, supra.* At the request of the Court, the guardian has furnished a further breakdown of the hours spent on legal issues in his Third Supplemental Affidavit of November 16, 1981. There he divides the time spent on legal issues into ten categories: duties of the guardian *ad litem*, responsibility for fees and costs, filings responsive to pleadings of defendant and third-party defendant, prejudgment interest, *forum non conveniens*, administration of judgments, filings requested by the Court, the motion for preliminary injunction still under advisement, collateral estoppel, and miscellaneous issues. Time spent researching the duties of the guardian, responding to pleadings directed against the guardian by defendant and third-party defendant, research incident to administration of the judgments and filings requested by the Court are all clearly recoverable, as the Court of Appeals has suggested. *Schneider v. Lockheed, supra*, at 854–55.

■ Research on payment of fees and costs, prejudgment interest, *forum non conveniens*, and statute of limitations (one of the miscellaneous items) was done so that the guardian could arrive at an independent judgment on the value of plaintiffs' claims for settlement purposes. Though it may be that it is entirely proper for the guardian to furnish such a second opinion to plaintiffs, this is not the sort of expense which may be properly charged to Lockheed. Evaluation of claims and settlement offers and resolution of legal uncertainties in connection with such evaluations is a task normally performed by counsel.

The function of a guardian *ad litem* is to protect the interests of those unable to protect their own interests. Many adult plaintiffs evaluate settlement offers without obtaining second opinions on the value of their claims or attempting to charge the costs of doing so to their opponents. While the infants here, who are incapable of exercising this choice for themselves, are entitled to a fully informed and competent judgment by someone with the capacity to exercise choice for them, they are not necessarily entitled to have this choice made by someone with all of the knowledge of litigation counsel on the legal issues involved, compensated at defendant's expense. However, the Court is persuaded that the relatively small amounts of time spent researching the issues of the preliminary injunction and collateral estoppel were reasonably spent in determining whether or not to pursue alternative courses of obtaining medical care and in developing an initial report to the parents.

■ The time spent in determining whether to retain the Lewis firm to litigate these cases and in developing the various trust provisions which might be used to protect sums recovered or received from settlements by the infants is clearly appropriate for a guardian *ad litem* and thus properly compensated by defendants. These items are elements of what the guardian has termed "miscellaneous" time, a category which also includes research on statutes of limitation, which is not compensable by defendant. Since some of these expenses are recoverable from defendant while others are not, and the expenses are not distinguished from each other by the guardian, the amounts currently in the "miscellaneous" category are excluded from the amount which the Court can now award. The guardian may file additional affidavits which state which of these expenditures fall into which categories to perfect his claim for those activities which are recoverable from defendant under the principles announced here.

Accordingly, the Court has determined that of the total additional compensation claimed by the guardian, $82,387.00, the amount of the disallowed claims for legal research, is not now recoverable from defendant. This leaves a total of $294,456.70 presently owed by defendant to the guardian. Lockheed claims, however, that it is entitled to setoff from this amount the portion attributable to the three cases that were settled prior to the Court of Appeals' decision (the cases of Adam Hung Wright, James Everett Reynolds, and Li Thi Hoang Phi Caspar). The guardian responds that the amounts which were set aside for the guardian *ad litem* in those cases were intended as insurance against the possibility that the guardian might go unpaid if this Court's determination that Lockheed is responsible for the fees of the guardian *ad litem* is reversed. However, Lockheed has persuasively responded that its settlements in these cases were intended to dispose of all claims by these plaintiffs against defendant, including costs of which the guardian's fees are an element. This Court has previously ordered that six and two-thirds percent of the settlement amounts in two of these cases be set aside for the guardian. The Court concludes that this approach should also be applied to the third of these cases (Caspar). The Court also concludes that one-half of the amounts so set aside is a reasonable approximation of the amount of the guardian's fees which are reasonably attributable to these cases. Though all plaintiffs have benefited from the guardian's activity, these plaintiffs have especially benefited from the effort made on behalf of plaintiffs who went to trial and by receiving an earlier recovery than many of their peers. Moreover, the guardian's participation in the settlement negotiations in these cases was for the direct and primary benefit of these plaintiffs. Finally, these plaintiffs can be reimbursed if it later appears that their share of the guardian's fees is disproportionate to that of other plaintiffs.

Accordingly, the Court concludes that defendant is entitled to a further credit in the amount of $72,036.00, representing one-half of the sum of the $66,700.00 set aside in *Wright*, $57,362.00 set aside in *Reynolds*, and $20,100 to be set aside in *Caspar*. This leaves the sum of $222,510.00 which is the amount the defendant must now pay to the guardian. This amount is certainly not unreasonable in view of the size of the settlements and verdicts which have been entered in these cases. In any future judgment or settlement which does not leave guardian fees to be determined separately, the sums determined to be owed for such fees will be assessed for services provided after May 19, 1981, and will of course be governed by the requirement of the Court of Appeals that services after that date be shown to have benefited the particular plaintiff.

Accordingly, an accompanying order grants judgment to the guardian against Lockheed for $222,510.00, and sets a hearing on February 5, 1982, at which time any of the plaintiffs in the three settled cases mentioned above may show cause why one-half of the amounts set aside for the guardian should not be disbursed to the guardian. The guardian may submit an additional affidavit to further segregate the "miscellaneous" time for which he is entitled to reimbursement. None of the foregoing precludes later review or further interim and final payments to the guardian *ad litem.*