**THREE–SEVENTY LEASING CORPO-RATION, Plaintiff-Appellant Cross-Appellee,**

v.

**AMPEX CORPORATION, Defendant-Appellee Cross-Appellant.**

No. 74–3832.

United States Court of Appeals, Fifth Circuit.

March 18, 1976.

994

Wm. Andress, Jr., Dallas, Tex., for plaintiff-appellant cross-appellee.

Allen Butler, William F. Carroll, Dallas, Tex., for defendant-appellee cross-appellant.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

Three-Seventy Leasing Corporation (370) seeks damages from Ampex Corporation (Ampex) for breach of a contract to sell six computer core memories.[1] The district court, sitting without a jury, found that there was an enforceable contract between 370 and Ampex. The court found, however, that 370 failed to prove any damage which could be recovered within the terms and limitations of the contract, and therefore entered judgment in favor of Ampex. The court also entered judgment for costs in favor of Ampex. 370 challenges the district court's determination of damages and its award of costs. Ampex cross-appeals, claiming as error the court's determination that there existed an enforceable contract. We find sufficient evidence to support the district court's finding of an enforceable contract, and agree that the terms of that contract precluded recovery of the type of compensatory damages which 370 sought below. We conclude that the court erred, however, when it awarded costs to Ampex, and therefore remand for a redetermination of that issue.

## THE CONTRACT

Three-Seventy Leasing Corporation was formed by Joyce, at all times its only active employee, for the purpose of purchasing computer hardware from various manufacturers for lease to end-users. In August of 1972, Kays, a salesman of Ampex and friend of Joyce, initiated discussions with Joyce regarding the possibility of 370 purchasing computer equipment from Ampex. A meeting was arranged between Kays, Joyce, and Mueller, Kays' superior at Ampex. Joyce was informed at this meeting that Ampex could sell to 370 only if 370 could pass Ampex's credit requirements. Joyce informed the two that he did not think this would be a problem.

At approximately the same time, Joyce began negotiations with Electronic Data Systems (EDS), which resulted in EDS's verbal commitment to lease six units of Ampex computer core memory from 370. Desiring to close the two transactions simultaneously, Joyce continued negotiations with Kays. These negotiations resulted in a written document submitted by Kays to Joyce at the direction of Mueller. The document provided for the purchase by Joyce of six core memory units at a price of $100,000 each, with a down payment of $150,000 and the remainder to be paid over a five year period. The document specified that delivery was to be made to EDS. The document also contained a signature block for a representative of 370 and a signature block for a representative of Ampex.

Joyce received this document about November 3, 1972, and executed it on November 6, 1972. The document was never executed by a representative of Ampex. This document forms the core of the present controversy. 370 argues that the document was an offer to sell by Ampex, which was accepted upon Joyce's signature. Ampex contends that the document was nothing more than a solicitation which became an offer to purchase upon execution by Joyce, and that this offer was never accepted by Ampex. 370 counters by arguing in the alternative that even if the document when signed by Joyce was only an offer to purchase, the offer was later accepted by representatives of Ampex.

The district court, in concluding that there existed an enforceable contract, made no determination as to whether the document described above was an offer to sell accepted by Joyce's signature, or an offer to purchase when signed by Joyce which was later accepted by Ampex.

We reject the first alternative as being without evidentiary support. Elemental principles demand that there

---

1. Jurisdiction is founded on diversity of citizenship. 28 U.S.C.A. § 1332. We are thus *Erie*-bound to apply Texas law.

be a meeting of the minds and a communication that each party has consented to the terms of the agreement in order for a contract to exist. *Garcia v. Villarreal,* Tex.Civ.App.1972, 478 S.W.2d 830. There is no evidence, either written or oral, other than the document itself, which shows that Ampex had the requisite intent necessary to the formation of a contract prior to November 6, 1972, the date the document was executed by Joyce. And the document on its face does not supply that intent. Rather, the fact that the document had a signature block for a representative of Ampex which was unsigned at the time it was submitted to Joyce, in the absence of other evidence, negates any interpretation that Ampex intended this to be an offer to Joyce, without any further acts necessary on the part of Ampex.

Thus, the document, when signed by Joyce, at most constituted an offer by him to purchase. In order for there to be a valid contract, we must therefore find some act of acceptance on the part of Ampex.

On November 9, 1972, Mueller issued an intra-office memorandum which stated in part that "[o]n November 3, 1972, Ampex was awarded an Agreement by Three-Seventy Leasing, Dallas, Texas, for the purchase of six (6) ARM–3360 Memory Units", to be installed at EDS. This memorandum further informed those concerned at Ampex of Joyce's request that all contact with 370 be handled through Kays. On November 17, 1972, Kays sent a letter to Joyce which confirmed the delivery dates for the memory units.[2] We conclude, in light of the circumstances surrounding these negotiations, that the district court was not clearly erroneous when it found that Kays had apparent authority to accept Joyce's offer on behalf of Ampex, and we further conclude that the November 17 letter, in these circumstances, can reasonably be interpreted to be an acceptance.

■ An agent has apparent authority sufficient to bind the principal when the principal acts in such a manner as would lead a reasonably prudent person to suppose that the agent had the authority he purports to exercise. *Douglass v. Panama, Inc.,* Tex.1974, 504 S.W.2d 776; *Tryad Service Corp. v. Machine Tool Center, Inc.,* Tex.App.1974, 512 S.W.2d 785. Further, absent knowledge on the part of third parties to the contrary, an agent has the apparent authority to do those things which are usual and proper to the conduct of the business which he is employed to conduct. *Mechanical Wholesale, Inc. v. Universal-Rundle Corp.,* 5 Cir. 1970, 432 F.2d 228 (interpreting Texas law).

■ In this case, Kays was employed by Ampex in the capacity of a salesman. It is certainly reasonable for third parties to presume that one employed as salesman has the authority to bind his employer to sell. And Ampex did nothing to dispel this reasonable inference. Rather, its actions and inactions provided a further basis for this belief. First, Kays, at the direction of Mueller, submitted the controversial document to Joyce for signature. The document contained a space for signature by an Ampex representative. Nothing in the document suggests that Kays did not have authority to sign it on behalf of Ampex.[3]

---

2. That letter stated:

Dear John:

With regard to delivery of equipment purchased by Three-Seventy Leasing: Ampex will ship three (3) million bytes of ARM–3360 magnetic core in sufficient time to install 1½ million bytes the weekend of December 16, 1972. The remaining balance of 1½ million bytes will be installed by the weekend of December 30, 1972.

The equipment will be installed in Camphill, Pennsylvania at a predetermined site by Electronic Data Systems.

Regards,
Thomas C. Kays
Sales Representative

3. It would have been an easy matter to provide in the document that only certain officers of Ampex had authority to sign on its behalf. Any inference to the contrary resulting from Ampex's failure to specify such a limitation must weigh against Ampex.

Second, Joyce indicated to Kays and Mueller that he wished all communications to be channeled through Kays. Mueller agreed, and acknowledged this in the November 9 intra-company memorandum. Neither Mueller, nor anyone else at Ampex ever informed Joyce that communication regarding acceptance would come through anyone other than Kays. In light of this request and Ampex's agreement, Joyce could reasonably expect that Kays would speak for the company.

Various individuals in the Ampex hierarchy testified at trial that only the contract manager or other supervisor in the company's contract department had authority to sign a contract on behalf of Ampex. However, there is no evidence that this limitation was ever communicated to Joyce in any manner. Absent knowledge of such a limitation by third parties, that limitation will not bar a claim of apparent authority. *Douglass v. Panama, Inc., supra.*

Thus, when Joyce received Kays' November 17 letter, he had every reason to believe, based upon Ampex's prior actions, that Kays spoke on behalf of the company. We thus agree with the district court's finding that Kays had apparent authority to act for Ampex.

Having determined that Kays had apparent authority to bind Ampex, we further conclude that his letter of November 17, in light of the pattern of negotiations, could reasonably be interpreted as a promise to ship the six memory units on the dates specified in the letter and on the terms previously set out in the document executed by Joyce and submitted to Ampex. The district court's finding that a contract was

formed is therefore not clearly erroneous.[4]

## DAMAGES

370 seeks compensatory damages for profits lost on the EDS contract and for profits lost on future anticipated contracts with EDS. 370 challenges the determination of the district court that it was not entitled to recovery of damages in light of the terms of the contract and the evidence adduced at trial. Paragraph 8 of the contract contains the following limitation of remedies:

> Ampex shall not be liable for damages due to delay in deliveries, service, use of the equipment or other performance as specified in this agreement, and shall in no event be liable for any incidental or consequential damages.

Although 370 made no reference to this limitation in its brief, it recognized the existence of the limitation at oral argument, but asserted that the lost profits sought as damages were not consequential damages within the purview of that limitation. We disagree.

At the outset, we note that Paragraph 9 of the contract provides that the agreement shall be construed under the laws of California. Neither Ampex nor 370 has presented applicable California law to this court; both have attempted to construe the agreement under Texas law. Since a clause providing for choice of laws is valid, Tex.Bus. & C.Code, § 1.105, we feel compelled to look to California law in the determination of the rights and liabilities of the parties.[5]

The California Commercial Code, § 2713, sets the measure of damages for non-delivery by the seller as the difference between the market price at the

**4.** Ampex contends that even if a contract is found to exist, it is unenforceable since there is no writing which complies with the statute of fraud. This argument falls along with their argument that there is no contract. The November 17 letter from Kays which constitutes the acceptance also satisfies the requirements of the statute of frauds.

**5.** The application of Texas law would nevertheless demand the same result, since both California and Texas have adopted the Uniform Commercial Code in substantially similar forms, and interpretations of the applicable code sections are the same in both states.

time of breach and the contract price, together with any incidental or consequential damages provided for in the Code.[6] At trial, no evidence was introduced as to market price at the time of breach, nor was any evidence offered as to incidental damages, as defined in Section 2715. We are left to consider only the element of consequential damages.

Section 2715(2), California Commercial Code, defines consequential damages as, *inter alia,*

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;

. . .

Although the section does not specifically list lost profits as consequential damages, California courts have viewed lost profits as resulting from the general or particular requirements and needs of the buyer, and thus within the definition of consequential damages. *Gerwin v. Southeastern California Ass'n of Seventh Day Adventists,* 1970, 92 Cal.Rptr. 111, 14 Cal.App.3d 209.[7]

 Section 2719, California Commercial Code, provides that consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. The section also provides that a limitation of consequential damages where the loss is commercial is valid, unless it is proved that the limitation is unconscionable. The issue of unconscionability was not raised in the court below, nor is there evidence in the record to support such a claim. The limitation on consequential damages found in the contract is therefore valid, and precludes the recovery of damages for lost profits

by 370. The district court did not err in its compensatory damage determination.

## COSTS

The district court, after determining that Ampex breached its contract but that 370 failed to prove damages recoverable under that contract, awarded costs to Ampex. We hold that the award of costs to Ampex was error, and we remand for a reconsideration of that issue.

 When a cause of action for breach of contract exists, but the harm caused by the breach is not sufficiently established so as to allow an award of compensatory damages, the plaintiff is entitled to an award of nominal damages, both under California law, *Ross v. Frank W. Dunne Co.,* 119 Cal.App.2d 690, 260 P.2d 104, and the law of Texas, *Atomic Fuel Extraction Corp. v. Slick's Estate,* Tex.Civ.App.1964, 386 S.W.2d 180. See Restatement of Contracts, § 338. We thus direct the district court to enter an award of nominal damages in favor of 370. In our view, the award of nominal damages marks the plaintiff, 370, as the "prevailing party" within the meaning of Rule 54(d), Fed.R.C.P. *Chesapeake & Potomac Tel. Co. v. Clay,* 1952, 90 U.S.App.D.C. 206, 194 F.2d 888; *Bowman v. West Disinfecting Company,* E.D. N.Y.1960, 25 F.R.D. 280.

 Rule 54(d) provides that in the absence of any express provision in a federal statute or rules "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Ampex argues that even if 370 is the prevailing party, Rule 54(d) gives the district court the power, which was exercised in this case, to award costs to the nonprevailing party. Ampex cannot,

---

6. Section 2713, California Commercial Code, provides in pertinent part:

(1) Subject to the provisions of this division with respect to proof of market price (Section 2723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this division (Section 2715), but less expenses saved in consequence of the seller's breach.

7. Texas courts have also held that consequential damages include lost profits. *General Supply and Equipment Co., Inc. v. Phillips,* Tex.Civ.App.1972, 490 S.W.2d 913, 920.

however, point to any authority which has sustained an award of costs to the nonprevailing party. Although the language of Rule 54(d) may be susceptible to the interpretation Ampex wishes to place on it, we do not think that it goes so far. Rule 54(d) does not give the district court the power to award costs to the nonprevailing party, but only gives that court discretion to order that each party bear part or all of its own costs. See *Wise v. DeWerd,* 3 Cir. 1967, 373 F.2d 306. We therefore remand this issue to the district court, to determine whether costs should be awarded to the prevailing party, 370, or whether, in its discretion, part or all of 370's costs should be borne by 370.

Affirmed in part and reversed in part.