725 F.2d 1392
 233 U.S.App.D.C. 286
 FRIENDS FOR ALL CHILDREN, INC., as legal guardian and next
friend of the named 150 infant individuals, et al.
v.
LOCKHEED AIRCRAFT CORPORATION, A California Corporation and
United States of America, Appellants.
FRIENDS FOR ALL CHILDREN, INC., as legal guardian and next
friend of the named 150 infant individuals, et
al., Appellants
v.
LOCKHEED AIRCRAFT CORPORATION, a California Corporation and
United States of America.
 Nos. 82-1739, 82-1814.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 2, 1983.
Decided Jan. 13, 1984.
 
 1
 Appeals from the United States District Court for the District of Columbia (D.C. Civil Action No. 76-00544).
 
 
 2
 Carroll E. Dubuc, Washington, D.C., with whom Nichols H. Cobbs, Richard M. Sharp, Patrick M. Hanlon, Bruce C. Swartz, and William Kanter and Linda Jan S. Pack, Attys., Dept. of Justice, Washington, D.C., were on the brief for appellants and cross-appellees.
 
 
 3
 J. Vernon Patrick, Jr., Birmingham, Ala., with whom Oren R. Lewis, Jr., Arlington, Va., was on the brief, for appellees and cross-appellants. Michael S. Marcus and William M. Cohen, Washington, D.C., also entered appearances for appellees and cross-appellants.
 
 
 4
 Before WILKEY and MIKVA, Circuit Judges, and McNICHOLS,* Senior District Judge, United States District Court for the District of Idaho.
 
 
 5
 Opinion for the Court filed by Senior District Judge mCNICHOLS.
 
 
 6
 Dissenting opinion filed by Circuit Judge MIKVA.
 
 RAY McNICHOLS, Senior District Judge:
 
 7
 The court has for review a partial final judgment entered below pursuant to Rule 54(b) Federal Rules of Civil Procedure.
 
 
 8
 The underlying facts of this massive litigation are fully set out in the published report of previous consolidated appeals to this court. Schneider v. Lockheed Aircraft Corp., 658 F.2d 835 (1981). Briefly, the infant plaintiffs are Vietnamese orphans allegedly injured during an airlift operation in April of 1975. The aircraft involved was manufactured by the defendant Lockheed Aircraft Corporation (Lockheed or Appellant). The children were being flown to the United States and ultimately were to be delivered to adoptive parents in this country and in Western Europe. Due to a malfunction a large cargo door opened while the aircraft flew at high altitude creating an explosive decompression and loss of oxygen. The plane subsequently crashed. It is claimed that the surviving children, plaintiffs herein, suffered various physical injuries to their persons as well as organic brain injuries. On April 2, 1976, Friends For All Children, Inc. (FFAC) filed a complaint in the United States District Court for the District of Columbia against Lockheed, claiming to represent the 150 surviving children as legal guardian and seeking damages.
 
 
 9
 The complaint alleged separate counts of negligence, breach of warranty, and strict tort liability, all generally based on alleged faulty design, manufacture, and maintenance of the aircraft which crashed. Punitive or exemplary damages were also sought.
 
 
 10
 Lockheed brought the United States of America in as a third party defendant. Subsequently the United States agreed not to contest liability to Lockheed for contribution or indemnification.
 
 
 11
 Lockheed contested the legal status of FFAC and its ability to represent the minors. Further, an ethical question regarding the position of counsel representing the plaintiffs was raised by the United States. It developed that a very complicated problem faced the trial judge. For reasons fully explicated in Schneider, supra, he decided to appoint a Guardian Ad Litem to represent the children.
 
 
 12
 The parties engaged in considerable discovery and finally on September 14, 1979, a stipulation was entered into, the interpretation of which is important to this appeal. The parties agreed that, if the plaintiffs would refile proper amended complaints by adoptive parents or other legal representatives, in which complaints claims for punitive or exemplary damages would be eliminated, Lockheed would: (1) not contest liability for compensatory damages proved to have been proximately caused by the aircraft crash; (2) pay each plaintiff so refiling a complaint the sum of $5,000 to provide medical treatment, therapy and litigation expenses; and (3) pay, upon the entry of judgment for any plaintiff from which an appeal was taken, thirty percent of the amount of the judgment, such payment to be non-refundable. The stipulation further provided that Lockheed did not admit responsibility or liability for any of the compensatory damage alleged to have been suffered by any plaintiff child; all such liability was expressly denied.
 
 
 13
 Subsequently, three cases involving individual children, with adopted surnames of Schneider, Marchetti and Zimmerly were tried and resulted in jury verdicts for the minors. Lockheed's appeals of these cases were consolidated and are reported as Schneider, supra. The trial court had ordered payment of substantial sums for the fees and expenses of the Guardian Ad Litem to be assessed as costs against Lockheed in the three cases consolidated on appeal in Schneider.
 
 
 14
 In the Schneider appeal, Lockheed alleged, inter alia, that the trial court erred in awarding as an item of costs the fees and expenses of the Guardian Ad Litem. A panel of this court reversed all three cases on the merits based on a perceived error in the admission of certain evidence. New trials were ordered. However, the court proceeded to determine the question of the propriety of allowing as an item of costs the fees and expenses of the guardian. The court held that under the particular circumstances of this case it was not an abuse of judicial discretion to include the fees and expenses of the guardian as costs.
 
 
 15
 Lockheed unsuccessfully sought a rehearing on this issue and, failing in that, applied for certiorari to the United States Supreme Court. The Petition for Certiorari was denied. We now hold that Schneider is the law of the case on the question of allowing as costs the fees and expenses of the Guardian Ad Litem.
 
 
 16
 While Schneider was on appeal, several other individual cases were settled by the parties. While the instant appeal was pending a so-called "Global Settlement" was accomplished whereby all of the claims of the children now residing in the United States, some 45 children, were settled.[1] We are advised that the settlements of the United States resident plaintiffs all provide that the fees and expenses of the Guardian Ad Litem are to be paid out of settlement proceeds. At oral argument the parties appeared to agree that as to these settled claims, the issues presented in this appeal have become moot. We so hold.
 
 
 17
 There remain for disposition before the trial court the claims of some 70 children who reside overseas.[2]
 
 
 18
 We turn now to the details of the judgment below from which this appeal has been taken. On July 22, 1981, subsequent to the reversal of Schneider, a motion was made on behalf of the guardian for "Partial Summary Judgment and Final Judgment" taxing accrued fees and costs for the guardian for the period from February 22, 1979 to May 19, 1981. On January 27, 1982 the court filed a Memorandum and entered an "Order and Partial Judgment" allowing most of the fees and expenses sought by the guardian. He reduced the request by various amounts paid to the guardian from certain settled cases. He also disallowed a portion of the claim which was made up of legal services rendered by the guardian. The sum allowed in the January 27, 1982 Order was $222,510.00. However this order, while purporting to be final, provided for a further hearing as to some aspect of the fee allowance.
 
 
 19
 On May 18, 1982, the court filed a "Supplemental Memorandum" and entered an "Order" updating the January 27, 1982 memorandum and ordering payment by Lockheed to the Guardian Ad Litem the sum of $282,225.01 for services rendered through May 19, 1981. The additional amounts allowed were for services not previously approved and for a portion of the legal charges disallowed in the prior order, but found in the May Order to be proper. In ordering this interim payment of fees and expenses to the guardian, the court reasoned that the plaintiffs in the cases were to be considered prevailing parties under the terms of the stipulation. He noted that Lockheed had agreed, inter alia, not to contest liability and to make an immediate payment to each plaintiff of $5,000.00. The court felt impelled to provide interim payments to the guardian for the stated reason that to delay compensation would cripple the ability of the guardian to perform his duty to the plaintiffs and the court and potentially deny the plaintiffs an opportunity to fully and fairly present their claims.
 
 
 20
 The present appeal is from this final May 1982 order, which was specifically made a final partial judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. It is important to keep in mind that, while this and other appeals are being processed in this complex litigation, trials, settlements, payments and other procedures are ongoing in the trial court. The situation has somewhat blurred the issues on this appeal. Questions we are struggling with here may be being mooted by developments below. However we perceive that the following issues may be reasonably thought to remain for our disposition:
 
 
 21
 a. Did the court err in holding that plaintiffs were the prevailing parties and entitled to certain costs to be paid pendente lite?
 
 
 22
 b. Whether, in any event, the allowance of fees and expenses of the Guardian Ad Litem attributable to legal research constituted error.
 
 
 23
 c. Did the court err in declining to apply the 30% provision of the September 14, 1979 stipulation to the May 18, 1982 judgment as claimed on the cross-appeal?
 
 
 24
 As indicated above, the court below granted an interim final judgment on May 18, 1982 in favor of the plaintiffs and the Guardian Ad Litem providing for payment as an item of costs to the Guardian Ad Litem for all approved fees and expenses accumulated during the period from February 22, 1979 (the date of appointment) up to May 19, 1981. It is important to note that the court directed that this interim payment be made directly to the Guardian Ad Litem. It will be helpful to understand some of the problems if the actual language of the district court is set forth. The following quotation is from the May 18, 1982 Supplemental Memorandum:
 
 
 25
 In making this ruling, the court does not overlook defendant's argument that the Guardian is not a party and is therefore not entitled to any relief. The Guardian was appointed Guardian Ad Litem by the court to infant plaintiffs as authorized by ancient principles of equity, and Rule 17(c) of the Federal Rules of Civil Procedure. Defendants repeatedly challenge the decision of this Court and the Court of Appeals about the status of the Guardian and his entitlement to compensation for services as guardian. They are chargeable with knowledge that to delay compensation for the Guardian or to make compensation piecemeal would cripple his ability to perform the duty imposed upon him by the Court and to defeat the Court's ability to discharge its duty to create an opportunity for a fair trial of the claims of infant plaintiffs, particularly where, as here, prejudgment interest is not available to the plaintiffs. The Court, a Court of equity, with authority under Rules 17(c) and 54(d), Federal Rules of Civil Procedure, and the All Writs Statute, 28 U.S.C. Sec. 1651, must prevent frustration of the guardian's service by attrition. Accordingly, to moot defendant's hypertechnicality the final judgment will be for the Guardian Ad Litem and for plaintiffs (including Friends For All Children) for the benefit of the Guardian Ad Litem in the amount of $282,225.01. (Emphasis in the original)
 
 
 26
 For the purposes of this opinion we assume that the basic authority for the allowance of costs is found in Rule 54(d), Federal Rules of Civil Procedure and is to be granted, as a matter of course, to the prevailing party. Schneider determined that in this particular case the fees and expenses of the guardian could be, in the discretion of the court, charged as costs.
 
 
 27
 We digress to observe that we have no trouble in assuming that parties to a civil action may, by stipulation, provide that one party may be considered the prevailing party even prior to the entry of final judgment. Nor do we doubt the discretionary power of a trial judge to order payment of costs pendente lite, in an appropriate case, in favor of a party properly designated as a prevailing party. We are of the view, however, that to qualify as a prevailing party, and thus be eligible for an interlocutory award of costs, one must establish a right or entitlement to some relief on the merits of one or more of his claims. The determination of the prevailing party issue in the instant case is the key to disposing of this appeal, and that determination turns on the interpretation and effect to be given to the stipulation heretofore outlined.
 
 
 28
 The triable issues in this case, as presented by the complaint and the answer, were unremarkable. Plaintiffs alleged that the defendant was negligent in the design and manufacture of the aircraft and therefore liable under the theories of negligence, breach of warranty and strict tort liability. By answer the defendants generally denied all liability and raised defenses of misuse of the aircraft, alterations and modifications after sale, intervening negligence of third parties, assumption of risk and contributory negligence on the part of the plaintiffs.
 
 
 29
 As the case was originally postured, in order to recover, plaintiffs had to prove at least one of its theories of liability and then show that the wrongful conduct of Lockheed proximately caused the injuries and consequent damages suffered by the individual plaintiffs. Through the vehicle of the stipulation the plaintiffs were relieved of the burden of proving that the accident was brought about by Lockheed's tortious conduct, but continued to bear the burden of proving actual injury proximately resulting from the accident and the extent of the consequential damages. Appellant stoutly argues that no individual plaintiff may be found to be a prevailing party, under Rule 54(d), until entry of a judgment establishing an injury proximately flowing from the admitted liability. Since no such judgment has been entered, appellant argues that no plaintiff is a prevailing party. To demonstrate that this is not a footless position under the facts of this case, appellant points out that in the most recent trial testing the claim of one of the plaintiff children the jury found in favor of Lockheed and in effect found that the plaintiff had failed to prove an injury proximately caused by the accident. For the purpose of this discussion it therefore appears that we must assume that it is not certain that each individual plaintiff will succeed on the ultimate merits. In the orders appealed from, the district court has not in any wise divided the interests of any of the plaintiffs whose claims remain pending.
 
 
 30
 In holding that the plaintiffs were the prevailing parties, the trial judge took a view of the case differing from that of the appellant because of the stipulation. The court was influenced by the fact that Lockheed not only agreed to forego contending liability, but also made a $5,000.00 cash payment to each individual plaintiff. He was likewise impressed by the fact that Lockheed agreed to pay a non-refundable 30% of any judgment obtained, not withstanding the outcome of any appeal. In his order of January 27, 1982, which is incorporated into the order appealed from, the trial judge stated:
 
 
 31
 Since plaintiffs are all prevailing parties, defendants are liable for these costs. This would be true even if a plaintiff had recovered only nominal damages. See Chesapeake and Potomac Tel. Co. v. Clay, 90 U.S.App.D.C. 206, 194 F.2d 888 (1952); Three-Seventy Leasing Corp. v. Ampex Corp., 528 F.2d 993 (5th Cir.1976). But in these cases, each plaintiff has recovered $5,000 as a result of the aforementioned stipulation, and is thus a fortiori a prevailing party and entitled to costs, whether or not he recovers further amounts at trial. Plaintiffs have also secured the defendant's agreement to pay 30% of any judgment without awaiting appeal; several plaintiffs have already recovered these amounts. Several others have gained substantial recoveries by settlement.
 
 
 32
 Lockheed maintains that the stipulation in which it agreed not to contest liability was not a one-sided victory for plaintiffs. It is true that plaintiffs in return gave up their claim for punitive damages; however, it is settled that plaintiffs need not prevail on all of their claims to be prevailing parties. See Chesapeake and Potomac Tel. Co. v. Clay, supra; 10 C. Wright & A. Miller [& Kane], Federal Practice and Procedure Sec. 2667 n. 8 (1973) and cases cited therein.
 
 
 33
 The Supreme Court has recently reaffirmed this proposition in Hampton v. Hanrahan, (sic) 446 U.S. 754 [100 S.Ct. 1987, 64 L.Ed.2d 670] (1980). Though the Court reversed the granting of interlocutory attorney's fees in that case, on the ground that plaintiffs had not yet been determined to be prevailing parties, it reiterated that such awards are appropriate where the plaintiff has established his entitlement to some relief. Id. at 757. Plaintiffs here have done more; they have actually received relief in the form of the $5,000 payment and the agreement to pay 30% of any judgment without appeal, the payment of such amounts to some plaintiffs after extensive jury trials, and by substantial awards by settlement.
 
 
 34
 Although the stipulation of September 14, 1979, p 13(d), reserved the issue of whether guardian's fees were payable as costs or out of the recovery or in some other manner, this merely operates to reserve the issue of whether the fees are properly chargeable as costs, not the issue of who is liable for costs. The issue of whether guardian's fees are properly chargeable as costs has been resolved adversely to defendant by the Court of Appeals, and in view of defendant's agreement not to contest liability for damages proximately caused by the crash, it cannot now dispute that plaintiffs are the prevailing party. Accordingly, the guardian is entitled to summary judgment against defendant for the amount of his reasonably incurred guardian's fees. There remains for consideration the amount of these fees.
 
 
 35
 It is clear that in determining that the plaintiffs were to be treated as having prevailed the trial court analogized the situation in this case to those cases dealing with costs, expenses and attorney's fees allowed pendente lite in certain civil cases brought under statutes designed to protect civil and constitutional rights. These are sometimes referred to as attorney's fees for private attorneys general. He relied heavily on a recent Supreme Court holding, Hanrahan v. Hampton, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), where the court dealt with the Civil Rights Attorney's Fee Award Act of 1976 (amending 42 U.S.C. Section 1988). In that act Congress provided for reasonable attorney's fees to be awarded the "prevailing party" in actions brought under any of several specified civil rights statutes. The Supreme Court held that, as it construed the legislative history of the Act, Congress intended that a party may be considered to have prevailed and be entitled to an award pendente lite if he has established a right to some relief on his claim without having yet obtained a favorable final judgment.
 
 
 36
 Additionally, the court below compared the instant case to one where a plaintiff prevails on the merits, but obtained only nominal damages. He cites Chesapeake and Potomac Tel. Co. v. Clay, 90 U.S.App.D.C. 206, 194 F.2d 888 (1952) and Three-Seventy Leasing Corp. v. Ampex Corp., 528 F.2d 993 (5th Cir.1976). This line of authority does teach that a party obtaining at least nominal damages may be considered as having prevailed and be eligible for a cost award under Rule 54(d).
 
 
 37
 Appellant seeks to distinguish each of these concededly established rules of law relied on by the trial court. It points out that in the Hanrahan situation Congress deliberately broadened the concept of "prevailing party" in civil rights and private attorneys general type cases in order to facilitate the ability of a plaintiff of modest means to proceed with an obviously meritorious suit. As to the line of cases allowing costs under Rule 54(d), where only nominal damages are awarded, appellant argues that in each of such cases a final judgment on the merits was entered in favor of the party held to prevail. Appellant further makes the point that the settlement by stipulation of some issues in massive litigation such as this should be encouraged. It is argued that, if a party concedes on one or more important issues in a case in order to save time and expense, while keeping other essential issues in controversy, he should not be penalized by having the court adopt a rule that the other party has ipso facto prevailed under Rule 54(d). Appellant argues that such a holding would tend to stifle stipulations which concede on some issues and thus serve the meritorious purpose of reducing the scope of the litigation.
 
 
 38
 With the arguments of the parties thus in mind, we are constrained to hold that the broad statutory interpretation of "prevailing party" recently established in civil rights type cases should not properly be applied to the ordinary tort case where Rule 54(d) is controlling.
 
 
 39
 We further hold that the case law allowing for costs under Rule 54(d), where only nominal damages are granted after final judgment on the merits, is not analogous to the facts of the instant case. Here no final judgment on the merits has been entered and from the record before us we are not certain such judgments will ever be entered in favor of each plaintiff. And, while it is true that the plaintiffs have each obtained relief in the form of $5,000 payments and a right to an unrefundable portion of any judgment obtained pending appeal, we are also cognizant that plaintiffs obtained this concession from the defendant as a quid pro quo since the plaintiffs gave up a claim for $1 Million each in punitive or exemplary damages as well as some other less important concessions.[3]
 
 
 40
 We thus conclude that the trial court was in error in finding that the plaintiffs were the prevailing parties under the facts of this case and under a reasonable interpretation of the stipulation. It follows that the judgment ordering payment, pendente lite, of fees and expenses of the Guardian Ad Litem as an item of costs must be reversed.
 
 
 41
 The record reflects that the case below is presently in a state of flux, due to settlements and other pending appeals. It is therefore deemed unnecessary to decide whether the court erred in including in the amount allowed the guardian for fees and expenses the time spent in legal research. The order appealed from is no longer viable under our holding and the issue may be mooted by further developments in the case.
 
 
 42
 Plaintiffs have cross appealed from that portion of the final judgment which denied their request that Lockheed be required to pay 30% of the judgment to the plaintiffs pending appeal. Such a payment, plaintiffs contend, is required by a stipulation entered into by the parties on September 14, 1979. That stipulation requires Lockheed, upon the entry of any judgment from which an appeal can be taken, to pay 30% of such judgment notwithstanding any appeal taken. The stipulation further provides that if such appeal results in reversal, the payments made under the stipulation are not refundable.
 
 
 43
 The district court held that this provision of the stipulation did not apply to the court's judgment taxing the fees for the guardian ad litem against Lockheed. It reasoned that the provision applied only to recovery directly for the benefit of the plaintiffs. Likewise the defendants contend that the stipulation's provision is intended to apply only to judgments entered on behalf of particular plaintiffs and not to judgments in favor of plaintiffs in general, which is how they characterize the judgment at issue here.
 
 
 44
 We believe that the stipulation must be interpreted to apply to the judgment entered in this case by the district court. In the related case of Schneider v. Lockheed, 658 F.2d 835 (D.C.Cir.1981), a panel of this court reversed judgments for several infant plaintiffs on the merits and remanded the cases for new trials. Nevertheless, it held that the stipulation required Lockheed to pay 30% of the judgments entered on behalf of the plaintiffs, even though those judgments included costs and fees for the guardian ad litem and other costs and fees that had been erroneously taxed against Lockheed by the district court. On appeal, the panel stated:
 
 
 45
 Even though we have found the District Court's award of prejudgment interest and amicus costs and fees to be error, the stipulation, with its explicit negation of any refund obligation as to any part of the judgment upon appellate reversal, does not contemplate that those items are refundable.
 
 
 46
 658 F.2d at 857.
 
 
 47
 While reversing the judgments in those consolidated appeals, the court held that the stipulation permitted plaintiffs to retain 30% of the total judgments, including fees and costs for the guardian ad litem and other costs and fees which were improperly taxed against Lockheed. Schneider controls the cross appeal taken here.
 
 
 48
 Furthermore, by its express terms the stipulation applies to any judgment from which an appeal can be taken. The stipulation was the product of negotiations between the parties and we are unwilling to upset the agreement so reached. Plaintiffs are entitled to receive 30% of that portion of the district court's judgment that has not been allocated as fees and expenses for the guardian ad litem in the 45 cases comprising the "Global Settlement" entered into while the instant appeal was pending.
 
 
 49
 Accordingly, the orders on appeal and cross appeal are reversed.
 
 MIKVA, Circuit Judge, dissenting in part:
 
 50
 I concur in that part of the majority's opinion which, pursuant to the parties' stipulation, awards 30% of the guardian's fees. I am compelled to dissent from the remainder of the opinion.
 
 
 51
 The majority opinion rests on two premises. First, that fees and expenses of a guardian properly can be charged as costs. Second, that the ward of the guardian ad litem must prevail before a court can tax the guardian's fees against the opposing party. With the first conclusion, I wholeheartedly concur. This circuit recently has reaffirmed the trial court's discretion to award guardian's fees as costs. See, e.g., Schneider v. Lockheed Aircraft Corp., 658 F.2d 835 (D.C.Cir.1981), cert. denied, 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). I strongly disagree with the second premise, however. I would hold that guardians ad litem can be awarded fees regardless of the outcome of the litigation.
 
 
 52
 Guardians ad litem are court officers, necessary both to protect wards of the court and to promote expeditious resolution of litigation. As one court explained: "[T]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done him. The guardian ad litem is appointed merely to aid and to enable the court to perform that duty of protection." Richardson v. Tyson, 110 Wis. 572, 86 N.W. 250, 251 (1901). Because guardians assist the court in performing its obligations to minors, trial judges have the discretion to order litigants to pay their fees.
 
 
 53
 The long term consequences of the majority's position are dangerous. A rule which requires that a ward prevail before guardian's fees can be awarded will undermine the court's ability and willingness to appoint guardians. The court's ability to appoint guardians will be hampered by its inability to assure payment. If a ward must prevail before the court can order compensation, potential guardians may avoid those appointments where the infant's likelihood of success is small or uncertain. Even when the infant's chance of success is large, a potential guardian may be hesitant to accept appointment since, in many cases, the guardian can neither predict nor control his involvement in the case--he is a court officer who must take all steps necessary to protect the infant. Simultaneously, the court's willingness to appoint guardians will diminish. Because payment cannot be guaranteed, courts may be disinclined to appoint guardians and to request substantial investments of time. The majority rule thus creates a disincentive both for guardians to accept appointments, and for courts to fulfill their common law obligation to protect minors.
 
 
 54
 The majority opinion fails to appreciate the special status of the guardian ad litem. Rule 17(c) of the Federal Rules of Civil Procedure empowers federal courts to appoint guardians ad litem for the protection of infants and incompetents. That Rule provides:
 
 
 55
 The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.
 
 
 56
 FED.R.CIV.P. 17(c). One fundamental principal underlies the appointment of all guardians. A guardian fulfills dual functions: he serves as both advisor and as court officer. In the first function, he is similar to an attorney since he may advise parties. In the second function, he is similar to a master since he advises the court and helps the court fulfill its common law responsibilities. By analogy to his role as attorney, a guardian might have to "prevail" to be awarded fees; by analogy instead to his role as master, a guardian might be thought to be entitled to fees from either party, win or lose. See Dyker Building Co. v. United States, 182 F.2d 85 (D.C.Cir.1950) (fees to a master). Rule 53(a) of the Federal Rules of Civil Procedure provides that "[t]he compensation to be allowed to a master shall be fixed by the court, and shall be charged upon such of the parties ... as the court may direct." FED.R.CIV.P. 53(a). Because of the guardian's similarity to a master, rote recitation of the rules regarding the award of attorney's fees cannot adequately resolve the question of when guardians are entitled to payment. Instead, we must consider, as the majority did not, the special role of the guardian ad litem in the judicial process.
 
 
 57
 The instant case exemplifies the duties a guardian may have to fulfill. The district court appointed the guardian ad litem after a controversy erupted concerning the ability of Friends for All Children to represent the infants. The district court instructed the guardian to give notice to the parents, to monitor and investigate any possible conflicts of interest, and to take whatever steps were necessary or appropriate to protect the children's interest. In re Air Crash Disaster Near Saigon, South Vietnam on April 9, 1975, No. 75-0205, Order (D.D.C. Feb. 23, 1979). The district court order which gave rise to this appeal further outlined some of the services that the guardian ad litem has performed. The guardian sought fees for, inter alia, meeting Lockheed's resistance to compensation, for overseeing the children's trial attorney, for reviewing alternative fee structures of possible attorneys, for research and administrative expenses incurred in connection with the forum non conveniens issue, for time discussing strategy, reviewing pleadings, and verifying interrogatories, and for studying an insurance pool. Friends for All Children v. Lockheed, 533 F.Supp. 895, 898-900 (D.D.C.1982). Throughout this litigation, the infants had separate trial counsel.
 
 
 58
 Those cases that have assessed guardian's fees and expenses against a losing party reflect an awareness of the guardian's special role. When courts have permitted the taxation of the guardianship fees against the losing party, the award usually is not justified on the basis that one party prevailed. Rather, the explanation of the award is the guardian's role as a court officer. As one court said, "[s]uch an award is made ... as a necessary consequence of the court's equitable responsibility to protect the interests of the minor litigants who cannot protect themselves." Panitch v. Wisconsin, 451 F.Supp. 132 (E.D.Wisc.1978). See also Franz v. Buder, 38 F.2d 605 (8th Cir.1930). These courts have looked at the services performed by the guardian and not at the litigation's outcome. Indeed, since the focus is the guardian's role, the outcome is irrelevant.
 
 
 59
 The result I suggest finds additional support in cases which already have held that the guardian ad litem 's costs and fees may be taxed against the prevailing party. The only unique factor which distinguishes these cases from the present one is that in the former the infant was a defendant rather than a plaintiff. In Metropolitan Casualty Insurance Co. v. Buscher, 15 Fed.Serv. (Callaghan) 54d.143, Case 1 (N.D.Ill.1950), the court concluded that the defendant's guardian ad litem 's fees should be paid by the prevailing plaintiff. The court concluded that justice and equity demanded this result.
 
 
 60
 It should be remembered that it was plaintiff's action in instituting suit that required the appointment by the court of a guardian ad litem to protect the interests of the minor defendant. Since defendants had no choice as to whether or not a guardian should be appointed, it seems reasonable that the plaintiff, who made the appointment necessary should bear the relatively small expense of his fee.
 
 
 61
 Id. State courts have reached similar conclusions. See, e.g., Minns v. Minns, 615 S.W.2d 893 (Tex.Civ.App.1981). Again, the focus is not on which party prevailed, but rather on the guardian's function. That function remains the same whether the child is the plaintiff or the defendant.
 
 
 62
 My dissent stems from the failure of the majority to focus on the guardian's role. The result I urge is consistent with the court's obligation to protect minors. This dissent does not break new ground--it merely extends established precedent. Courts have awarded the guardian's fee as costs where the guardian's ward prevailed. Courts also have awarded fees where the guardian's ward lost, but the guardian was associated with the infant defendants. Only one major pattern is absent--the situation where the guardian's ward lost, but the guardian was associated with the infant plaintiffs. There is no logical distinction which mandates that, in this category, the courts do not have discretion to award guardianship fees. The infant is still a ward of the court and the guardian is still a court officer charged with the infant's protection.
 
 
 63
 The majority opinion implies that its result is required by Rule 54(d) of the Federal Rules of Civil Procedure. Nothing in that Rule, however, compels the majority's conclusion. Contrariwise, the Rule supports the result suggested by this dissent. In pertinent part, Rule 54(d) provides:
 
 
 64
 Except when express provision therefore is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs.
 
 
 65
 FED.R.CIV.P. 54(d). Certainly, the Rule, as interpreted, creates a heavy presumption in favor of awarding costs to the prevailing party. Sun Ship, Inc. v. Lehman, 655 F.2d 1311 (D.C.Cir.1981). That presumption, however, is rebuttable. The last clause of the Rule confers on the trial court a measure of discretion to allocate the costs other than in favor of the prevailing party. See, e.g., Breeland v. Hide-A-Way Lake Inc., 585 F.2d 716 (5th Cir.1978) (implying that if a trial court justifies its actions, an award of costs to the loser would be permissible), modified in other respects, 593 F.2d 22 (5th Cir.1979). This court recently discussed the discretionary scope of Rule 54(d). In Baez v. United States, 684 F.2d 999 (D.C.Cir.1982) (en banc), the issue was the discretion permitted under Rule 39 of the Federal Rules of Appellate Procedure. In the course of the analysis, however, the court focused on Rule 54(d). The court noted that "[w]hen law and equity merged in 1951 the Federal Rules of Civil Procedure adopted both equity's discretionary standard for awarding costs and the common law presumption favoring the award of litigation costs to the prevailing party." Id. at 1003. See generally Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). The "unless otherwise directs" qualification in the Rule sets forth an equitable principle that allows the court to use concepts formerly applied in suits in equity and, when appropriate, to overcome the presumption of awarding costs to the prevailing party. See generally 6 J. MOORE, FEDERAL PRACTICE p 54.70, at 1312, 1320 (2d ed. 1976). Thus, if a court at equity had the power to tax guardian's fees as costs against the prevailing party, then a federal district court is similarly empowered. To determine the scope of this equitable discretion, it is therefore useful to examine the way in which state courts have treated the issue of guardians' fees.
 
 
 66
 In the states, where equity exists, a guardian ad litem is entitled to fees for services rendered. Under special circumstances, the court may assess and tax guardian fees against successful parties. Tracy v. Martin, 239 S.W.2d 567, 569 (Mo.App.1951), rev'd on other grounds, 363 Mo. 108, 249 S.W.2d 321 (1952). Cf. In re Ogier's Estate, 175 Neb. 883, 125 N.W.2d 68 (1963) (circumstances of case determine amount and source of guardian's fees). But see Wood v. Cordello, 91 A.D.2d 1178, 459 N.Y.S.2d 150 (1983). To deviate from the general rule that costs are to be awarded to the prevailing party, the circumstances must "reveal some consideration in equity and good conscience." Tracy v. Martin, 239 S.W.2d at 569. The interplay between equity and Rule 54(d) is illustrated in Metropolitan Casualty Insurance Co. v. Buscher, supra. Applying principles of equity through Rule 54(d), the court held that it had the discretion to assess the defendant's guardian ad litem 's fees against the prevailing plaintiff.
 
 
 67
 The mere presence of a guardian ad litem, however, does not inevitably lead to the award of fees. The assessment of guardianship fees against the prevailing party is a matter within the trial court's equitable discretion. For example, equitable considerations are the heaviest where, as in the instant case, the guardian, at the court's behest, invests substantial time and effort to ease the course of complex litigation. In contrast, equity probably would not encourage the taxation of guardianship fees when the guardian presses a frivolous or vexatious argument.
 
 
 68
 I would hold that the amount of, and source for, the guardian's fees is best left within the discretion of the trial court. This conclusion merely reflects equitable principles, which a federal court may apply pursuant to Rule 54(d). Moreover, this result, unlike that of the majority, would permit courts to fulfill their common law obligation to protect minors.
 
 
 69
 The majority concludes that the infants were not prevailing parties and thus reverses the district court. I agree with the majority that, at this time, the foreign children cannot be deemed prevailing parties. That conclusion, however, is irrelevant since the guardian ad litem should be able to collect fees even if the ward loses. I would remand the case so that the district court could consider whether this is an appropriate time to award fees to a "non-prevailing" guardian.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 At oral argument we were advised that two cases of United States resident children remain undetermined
 
 
 [2]
 Another panel of this court recently affirmed, on interlocutory appeal, the district court's denial of a motion to dismiss the claims of these infants on the basis of forum non conveniens. Friends for All Children v. Lockheed, 717 F.2d 602 (D.C.Cir.1983)
 
 
 [3]
 The dissent would find an exception to the plain meaning of Rule 54(d) for the fees of guardians ad litem by analogizing guardians to masters appointed by the court. Such an analogy is contrary to the clear directive of the rules. While the rules provide for the appointment both of masters and of guardians ad litem, they expressly permit the court to assess costs against any party only for the compensation of masters. Fed.R.Civ.P. 53(a). Rule 54(d)'s mandate that nonprevailing parties may not receive costs governs the award of fees for guardians ad litem
 Furthermore, even if, as the dissent argues, traditional equity principles were imported into Rule 54(d), these principles do not warrant an award of the guardian's fees to the nonprevailing party in this case. Equity principles permit the awarding of a guardian's fees to a nonprevailing party only when absolutely necessary to protect the interests of the minor party. The dissent is unable to cite any cases in which a nonprevailing plaintiff was awarded its guardian ad litem's fees precisely because plaintiffs who choose to use the courts to advance their legal interests in civil cases are less in need of an exception to the usual rule governing costs than are minor defendants haled into court. See Dis.Op. at 1402.