**Eugene duPONT, III, Plaintiff-Appellee Cross Appellant,**

v.

**SOUTHERN NATIONAL BANK OF HOUSTON, TEXAS, Trustee, et al., Defendants-Appellants Cross Appellees.**

No. 84–2043.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1985.

Rehearing Denied Nov. 4, 1985.

Frank B. Davis, Scott A. Brister, Houston, Tex., for Southern Nat. Bank.

Ronald A. Palmer, Gregg S. Weinberg, Houston, Tex., for Eugene duPont, IV.

Robert A. Gwinn, Charles L. Perry, Dallas, Tex., for Edward J. Brady, Trustee.

John T. Anderson, Duncan Elliott Osborne, Austin, Tex., for Daphne B. Vaughan and B.F. Vaughan.

J. Clifford Gunter, III, Michael Kuhn, Houston, Tex., for Eugene duPont, III.

Before CLARK, Chief Judge, GOLDBERG and TATE, Circuit Judges.

GOLDBERG, Circuit Judge:

This case illustrates once again the unfortunate verity that the family, although ideally a nurturer of love and affection, often succumbs to the corrosive influence of avarice and financial calculation. We chronicle today an attempt at economic filicide involving one of America's most renowned and wealthy families—the duPonts. The partriarch of the family, Eugene duPont III, seeks through this suit to revoke an irrevocable Trust whose principal beneficiary is his son, Eugene duPont IV. According to the findings of the court below, duPont III established the Trust largely to prevent his then-wife, Joanne A. duPont, from obtaining his property in the event of a divorce. Having since divorced Joanne duPont and remarried, duPont III now wishes to return the Trust property to his own control.

The district court, after hearing duPont III's evidence, orally granted the Trustees' Rule 41(b) motion to dismiss for failure to show a right to relief. Fed.R.Civ.P. 41(b).

When it entered its Findings of Fact and Conclusions of Law, however, the district court found that two disputed properties had been ineffectively transferred to the Trust and therefore still belonged to duPont III. In reaching this conclusion, the district court, without hearing the Trustees' evidence, granted duPont III a substantial portion of his claim.

The issues before us on appeal, like the family squabble underlying them, are messy. On the one hand, the Trustees and duPont IV argue that they were denied their right to litigate the ownership of the disputed properties. They contend, in addition, (1) that duPont III is judicially and equitably estopped from arguing that the property transfers were ineffective, (2) that the property transfers were valid as a matter of law, and (3) that the district court erred in denying ad litem fees and taxing costs to duPont IV.[1] DuPont III meanwhile cross-appeals from the district court's decision (1) that the Trust is valid, (2) that the Trustees should not be removed on the ground of hostility, and (3) that the litigation expenses of the Trustees were properly chargeable to the Trust, and, in particular, to Trust income rather than principal.

We conclude that the district court erred in invalidating the property transfers without allowing the appellants an opportunity to present their evidence, and therefore vacate and remand this portion of the district court's opinion. We also remand to the district court the issue of duPont IV's ad litem fees. In all other respects, we affirm the decision of the district court.

I

In December 1972, Eugene duPont III, one of the heirs to the duPont de Nemours fortune, established an irrevocable Trust for the benefit of himself, his then-wife, Joanne duPont, and his only son, duPont IV. The Trust provided for discretionary distributions of income by the Trustees to duPont III during his lifetime, and discretionary distributions of income and princi-

---

1. This issue is raised only by duPont IV and is neither joined nor opposed by the Trustees.

pal after his death to duPont IV, duPont IV's issue, and Joanne duPont if she was still married to duPont III at his death. The Trust instrument appointed Southern National Bank of Houston ("the Bank") and Edward J. Brady as Trustees; John H. Gardner was also later appointed as Trustee when he resigned from his position at the Bank. By its terms, the Trust was to be governed by Texas law. Through the time of trial, the Trustees had made discretionary payments of the entire net income of the Trust to duPont III.

The assets of the Trust initially consisted of stock in General Motors Corporation and E.I. duPont de Nemours Corporation. In 1973, duPont III attempted to transfer two additional assets to the Trust: (1) the Nemours Plantation in South Carolina, and (2) the Harridge House in New York City. These properties allegedly have a value of approximately $22 million, more than two-thirds the total value of the Trust. The transfer of Nemours Plantation was accomplished by means of the execution and delivery of three deeds naming the Trustees as grantees; that of Harridge House by means of a written assignment of duPont III's partnership interest in the property. DuPont III now claims that these transfers were defective and that they were not formalized by the Trustees until 1979, by which time duPont III had changed his mind about the transfers.

In October 1978, duPont III and his wife were divorced and duPont III remarried shortly thereafter. During the divorce proceedings, duPont III allegedly claimed that the Nemours and Harridge House properties belonged to the Trust and therefore could not be part of the divorce settlement. Excluding these properties, duPont III's personal liabilities exceeded his assets and, accordingly, the divorce settlement was (relatively speaking) quite small. Joanne duPont received $70,000 in alimony and $10,000 in child-support per year, as compared to duPont III's average Trust income of $1.1 million.

Following the divorce and remarriage, duPont III brought suit against the Trustees and various income and contingent beneficiaries and remaindermen of the Trust, including duPont IV, seeking to rescind or reform the Trust. According to duPont III, the Trust was established to achieve certain tax benefits—in particular, to allow him to provide for duPont IV's inheritance without paying gift or estate taxes—which will not in fact be realized. DuPont III argued that the Trust should therefore be rescinded or reformed because it was based on a mistake and its purpose had been frustrated. Alternatively, duPont III argued that the transfers of Nemours Plantation and Harridge House to the Trust were invalid. He also sought to remove the Trustees on the ground of hostility, and disputed certain payments by the Trustees of trustee fees and litigation expenses. The Trustees and duPont IV counterclaimed for a declaratory judgment that the transfers of property to the Trust by duPont III were valid and that the Trust's title to these properties was free of any cloud.

A trial before the district court commenced on November 29, 1982. At the close of duPont III's case in chief, the defendants moved to dismiss the suit pursuant to Fed.R.Civ.P. 41(b) on the grounds that duPont III had failed to establish that the Trust was invalid and that he was estopped from disputing the validity of the property transfers. The district court orally granted the defendants' motion and adjourned the trial. In its oral ruling, the district court stated that the Trust should be enforced since there was no mistake or frustration of purpose; it did not explicitly refer to that part of the defendants' motion concerning the validity of the Nemours and Harridge House property transfers.

On September 27, 1983, ten months after the trial was adjourned, the district court issued its memorandum opinion. *DuPont v. Southern National Bank*, 575 F.Supp. 849 (S.D.Tex.1983). The court held in favor of the Trustees concerning the validity of the Trust. However, it also held that title to Nemours Plantation and Harridge House had not been effectively transferred

to the Trust and that these properties therefore still belonged to duPont III.

After the district court denied the defendants' post-judgment motions, the defendants brought the present appeal and duPont III cross-appealed.

## II

### A

■ Rule 41(b) of the Federal Rules of Civil Procedure provides:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

A dismissal under Rule 41(b) differs from a directed verdict in a jury trial in that the court need not determine that the defendant is entitled to judgment as a matter of law. 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.13(4) at 41-177 to 41-179 (2d ed. 1985). Instead, as the finder of fact, the court may resolve disputed issues of fact. A Rule 41(b) dismissal is warranted when the district court, even before hearing the defendant's evidence, determines that the plaintiff has failed to offer persuasive evidence regarding the necessary elements of his case.

In the present case, the Trustees and duPont IV made a Rule 41(b) motion at the close of duPont III's evidence. This motion explicitly covered all aspects of duPont III's claim, including the validity of the Trust, the effectiveness of the transfers of property to the Trust, the removal of the Trustees, and the payment of litigation expenses by the Trustees. 12 Rec. at 6-12.[2] The district court orally granted the motion, stating:

I have heard the evidence and find as a fact that the purposes of this Trust have not been frustrated, because I think the purposes of it were accomplished. I don't think we have a situation here other than that, from the evidence. I find as a fact that it is more likely than not true that Mr. duPont knew exactly what he was doing when he did this and he simply changed his mind, so I am going to grant the motion. We will be in adjournment.

12 Rec. at 16-17. In granting the motion, the district court gave no indication that it was not granting the motion *in toto*. The court simply granted the motion and adjourned the trial. The appellants were thus justified in thinking that all aspects of duPont III's claim had been resolved in their favor.

■ Nevertheless, when the district court issued its memorandum opinion ten months later, it found that, although the Trust was valid, the transfers to the Trust of Nemours Plantation and Harridge House were not. *DuPont*, 575 F.Supp. at 865-66. In making this determination, the district court effectively granted a substantial portion of duPont III's claim. This was erroneous, since Rule 41(b) permits the court to dismiss the plaintiff's claim but does not allow it to render judgment in favor of the plaintiff. Fed.R.Civ.P. 41(b) ("The court ... may ... render judgment against the plaintiff *or* may decline to render any judgment until the close of all the evidence.") (emphasis added). Indeed, Rule 41(b) specifically provides that in making a Rule 41(b) motion, the defendant does not waive his right to offer evidence in the event that the motion is denied. The district court, in violation of this provision, gave the Trustees no opportunity to present their evidence even though it im-

---

**2.** Prior to the appellants' Rule 41(b) motion, the parties stipulated that Trustee fees had been incorrectly calculated. The appellants' Rule 41(b) motion thus did not embrace duPont III's claim regarding excessive trustee fees, and the appellants do not challenge the district court's award of $56,260.92 to duPont III on this issue.

plicitly denied a portion of their motion to dismiss.

DuPont III argues that the appellants knew that the district court's oral ruling was limited in scope, and therefore should have objected to the ruling immediately rather than wait ten months until the district court entered its memorandum opinion. According to duPont III, the appellants made a strategic decision to rest on the court's ruling rather than put on their evidence.[3] DuPont III, however, adduces no evidence in support of this contention. In our view, the appellants would have had to be clairvoyant to realize that the district court's ruling would be partially adverse. A party must act to protect his rights—but he cannot be charged with extrasensory perception.

DuPont III also argues that the district court's decision to render judgment without hearing any additional evidence was a reasonable exercise of the court's discretion to exclude duplicative testimony. He claims that all of the appellants' evidence was heard at trial, and that the appellants have not alleged what additional evidence they would have presented. This argument is without merit. Even were we to interpret the district court's actions as a discretionary decision to exclude the appellants' evidence as duplicative, the district court's discretion does not extend to ruling, in advance, that the appellants' entire case is duplicative. Here, the appellants never had an opportunity to introduce numerous exhibits into evidence, and ten of the witnesses listed in their pretrial order never testified for either side. Moreover, while several of the appellants' witnesses did testify, the appellants' attorneys specifically reserved their questions for these witnesses until the witnesses were recalled during the presentation of the appellants' case. As a result, the appellants never had a chance to establish a number of elements of their case—for example, that duPont III stated under oath in a prior judicial proceeding that Nemours Plantation and Harridge House belonged to the Trust.

■■■ The district court's actions in rendering partial judgment for duPont III not only runs afoul of Rule 41(b); it also violates the Due Process Clause of the Constitution. The appellants have a due process right to fully and fairly litigate each issue in their case. *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982); *see also Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Western Electric Co. v. Stern*, 544 F.2d 1196, 1199 (3d Cir.1976). By adjourning the trial and then holding, in part, for duPont III, the district court denied the appellants the opportunity to litigate the issue of whether the property transfers in question were valid. Apparently, the district court believed that while duPont III did not present persuasive evidence that the Trust was invalid, he did present persuasive evidence that the property transfers were invalid. In this event, the court should have granted a partial dismissal and continued the trial on the issue of the validity of the property transfers. The district court's failure to do this denied the appellants due process.[4] *See Carter v. Morehouse Parish School*

---

3. Although duPont III does not explain what strategic purpose might have been served by the appellants' decision not to put on their evidence, we assume that duPont III is arguing that the appellants elected to stand on their motion and appeal from the court's partially adverse ruling rather than to waive the motion and proceed with their case. For the reasons discussed in the text, we reject this argument. However, as discussed in Part II.B below, we do agree that the appellants, on remand, must either appeal from the district court's adverse ruling or put on their evidence; they cannot do both.

4. The district court's decision does not withstand scrutiny any better if it is recharacterized as a partial summary judgment for the plaintiff. DuPont III never made a motion for summary judgment and the appellants therefore were not on notice that they should allege in response which issues of material fact were disputed. Moreover, it seems clear that a number of material facts are in dispute—for example, whether duPont III alleged successfully in a prior judicial proceeding that the property transfers were valid—and that summary judgment is therefore inappropriate substantively as well as procedurally.

*Board,* 441 F.2d 380 (5th Cir.) (where defendants chose not to present evidence at trial in reliance on district court's oral ruling, court's final order denied due process since it was based on a different ground), *cert. denied,* 404 U.S. 880, 92 S.Ct. 201, 30 L.Ed.2d 161 (1971).[5] We therefore vacate that portion of the district court's opinion which dealt with the property transfers and remand in order for the appellants to offer their evidence.

## B

The Trustees and duPont IV argue that we need not remand the case for the presentation of additional evidence since, based on the evidence presented already, they are entitled to a judgment as a matter of law. In effect, the appellants contend that the district court erred in partially denying their Rule 41(b) motion to dismiss.

■ Given the present posture of the case, we do not pass upon this contention. When a Rule 41(b) motion is denied, the defendant has two alternatives: he can either proceed to present his evidence, or he can stand on his motion and bring an appeal. He cannot, however, do both. By presenting evidence, a defendant waives his right to appeal from the denial of his motion to dismiss; by appealing the motion to dismiss, he waives his right to present evidence should his appeal be denied. *Wealden Corp. v. Schwey,* 482 F.2d 550, 551-52 (5th Cir.1973); *accord Duval v. Midwest Auto City,* 578 F.2d 721, 724 (8th Cir.1978); *A. & N. Club v. Great American Insurance Co.,* 404 F.2d 100, 103-04 (6th Cir.1968); *see also* 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.13[1] at 41-167 & nn. 14-16 (2d ed. 1985).

Earlier, we rejected duPont III's argument that the appellants made an election by not presenting evidence after the district court's oral ruling. In our view, the appellants had no reason to believe that the district court's ruling would be partially

adverse and that an election was necessary; instead, the appellants believed that they had prevailed. The appellants only learned that the district court was denying part of their Rule 41(b) motion when it entered its memorandum opinion.

When the district court did enter its memorandum opinion, however, an election was necessary. Instead, the appellants attempted to have it both ways: they made motions both for a new trial and to amend the district court's findings of fact and conclusions of law. On appeal, the appellants again argue, on the one hand, that they should be allowed to present their evidence, and, on the other, that the district court erred in denying their motion to dismiss.

By remanding to the district court, we give the appellants the opportunity to present evidence in their behalf. If the appellants are satisfied with the evidence already in the record, and wish to stand on their Rule 41(b) motion, they are free to do so. Thus far, however, the appellants have not clearly indicated that they wish to take this avenue, but have instead contended that they were denied their day in court. We take the appellants at their word and therefore do not consider at this time their contention that their Rule 41(b) motion should have been granted as a matter of law.

## C

Finally, duPont IV argues on his own behalf that the district court erred in denying ad litem fees. On August 6, 1982, the district court appointed Ronald L. Palmer as both guardian and attorney ad litem for duPont IV, who is a minor. 4 Rec. at 556. However, it denied duPont IV's request that expenses be paid from the Trust income on the ground that duPont IV had sufficient assets of his own. *Id.* at 556-57. In its memorandum opinion and final judg-

---

**5.** DuPont III argues that *Carter* has little weight since it has not been cited in subsequent cases. However, in our view the paucity of citations to

*Carter* more likely results from the fact that district courts rarely rule against a party without at least hearing the party's evidence.

ment, the district again apparently denied an award of ad litem fees to duPont IV.

█ The roles of a guardian ad litem and an attorney ad litem differ, and we must consider each separately. A guardian ad litem is, in a sense, an officer of the court. "[He] is not simply counsel to one party in the litigation, but instead plays a hybrid role, advising one or more parties as well as the court." *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 854 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 994, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); *see also Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 725 F.2d 1392, 1400–01 (D.C.Cir.1984) (Mikva, J., dissenting in part); *Franz v. Buder*, 38 F.2d 605, 606 (8th Cir.1930); *cf.* Fed.R.Civ.P. 17(c) (authorizing appointment of guardian ad litem by district court). As one court explained, "[T]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done him. The guardian ad litem is appointed merely to aid and to enable the court to perform that duty of protection." *Richardson v. Tyson*, 110 Wis. 572, 86 N.W. 250, 251 (1901), *quoted in Friends for All Children*, 725 F.2d at 1400. An attorney ad litem, in contrast, serves no special function. He performs the same services as any attorney—giving advice, doing research, and conducting litigation—only for a minor child rather than for an adult.

█ As an officer of the court, the expenses of a guardian ad litem are properly taxable as costs pursuant to Fed.R.Civ.P. 54(d). *Schneider*, 658 F.2d at 854–55; *Franz*, 38 F.2d at 606–07; *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 533 F.Supp. 895, 900–01 (D.D.C.1982), *rev'd on other grounds*, 725 F.2d 1392 (D.C.Cir.

1984); *Panitch v. Wisconsin*, 451 F.Supp. 132 (E.D.Wis.1978).[6] In the present case, the district court did not specifically rule on whether duPont IV's guardian ad litem fees could be included as costs. It simply ordered duPont III to pay the defendants' costs, offset by duPont III's costs relating to the issue of excessive trustee fees, on which duPont III had prevailed. 1 Rec. at 157. On remand, the district court should determine whether duPont IV is entitled to an award of costs for his guardian ad litem fees. If the district court determines, in the exercise of its discretion, that an award of costs is not warranted despite duPont IV's prevailing party status, it must state its reasons for this conclusion. *Schwarz v. Folloder*, 767 F.2d 125, 131–32 (5th Cir. 1985). If, on the other hand, the court determines to follow the normal presumption in favor of an award of costs to the prevailing party, it should calculate these costs. In any event, we agree with duPont IV that his award of costs should not be offset by the plaintiff's costs relating to the excessive fee issue, since duPont IV was not a party to that issue.

█ We also agree with duPont IV that his attorney ad litem expenses are taxable to the Trust. Unlike guardian ad litem fees, attorney ad litem fees cannot be assessed as costs since the attorney ad litem performs the ordinary services of an attorney; he does not act as an officer of the court. *Franz*, 38 F.2d at 606–07; *Friends for All Children*, 533 F.Supp. at 903. *But cf. Schneider*, 658 F.2d at 855 (responsibilities of guardian ad litem may include legal research and analysis; therefore allowance of legal expenses as costs is within discretion of trial court). His expenses are no more assessable as costs than are ordinary counsel fees.[7] However,

---

6. To the extent that awards of guardian ad litem fees in diversity cases depend on the applicable state law, *see* 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 17.26 at 17–283 (2d ed. 1985); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1570 at 778 (1971), our conclusion is consistent with Texas law, *Minns v. Minns*, 615 S.W.2d 893, 897 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ dism'd).

7. Because in the present case the same person acted as guardian and as attorney ad litem, the district court must differentiate between the expenses incurred by him in his dual capacities. As discussed in the text, his expenses as guardian ad litem are normally taxable against duPont III as costs; his expenses as attorney ad litem are taxable against the Trust.

when an attorney ad litem acts to preserve a trust for the benefit of a minor, then his expenses, although not taxable as costs, can be recovered from the trust. *United States v. Equitable Trust Co.*, 283 U.S. 738, 743, 51 S.Ct. 639, 641, 75 L.Ed. 1379 (1931); *Folsom v. McDonald*, 237 F.2d 380, 381–82 (4th Cir.1956); *Mutual Life Insurance Co. v. Ginsburg*, 228 F.2d 881, 883–84 (3d Cir.), *cert. denied*, 351 U.S. 979, 76 S.Ct. 1050, 100 L.Ed. 1495 (1956). As the Supreme Court stated in *Equitable Trust*,

> It is a general rule in courts of equity that a trust fund which has been recovered or preserved through their intervention may be charged with the costs and expenses, including reasonable attorney's fees, incurred in that behalf; and this rule is deemed specially applicable where the fund belongs to an infant or incompetent who is represented in the litigation by a next friend. "Such a rule of practice," it has been said, "is absolutely essential to the safety and security of a large number of persons who are entitled to the protection of the law—indeed, stand most in need of it—but who are incompetent to know when they are wronged, or to ask for protection or redress."

283 U.S. at 744, 51 S.Ct. at 641 (quoting *Voorhees v. Polhemus*, 36 N.J.Eq. 456, 458).

■ The district court denied duPont IV his attorney ad litem fees, giving as its only reason that "litigation expenses have been charged against the income account of the Trust and duPont III is the income account beneficiary." *DuPont*, 575 F.Supp. at 866. Apparently, the court believed that if it taxed duPont IV's attorney ad litem expenses to the Trust, it would in effect be taxing the fees against duPont III, in violation of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which proscribes awards of attorney fees absent specific statutory authority. If this was the district court's concern, then the court should have ordered that attorney ad litem expenses be paid from the principal rather than from the income of the Trust.

It should not have denied these fees altogether.

DuPont III argues that the services provided by the guardian and attorney ad litem were duplicative, excessive, and unreasonable, primarily because the Trustees and duPont IV had identical interests in defending the suit and pursued a unified, common defense. The district court, however, never found that the ad litem fees were duplicative or excessive, and we do not believe that they were. DuPont IV's interest as one beneficiary of the Trust was not identical to those of the Trustees, and appointment of a guardian ad litem to protect duPont IV's interest was therefore warranted, as the district court itself implicitly recognized in making the appointment. We therefore order the district court to calculate appropriate attorney fees and to tax these fees to the Trust.

### III

In his cross-appeal, duPont III argues that the district court erred in four respects: (1) by upholding the validity of the Trust; (2) by refusing to remove the Trustees; (3) by awarding excessive attorney fees; and (4) by holding that the Trustees could properly pay their litigation expenses from Trust income. We disagree with all but the last of these arguments.

### A

■ DuPont III argues at length that the Trust was based on a mistake of fact and should therefore be rescinded or reformed. The starting point of his analysis is that his primary motive in creating the Trust was to achieve certain tax benefits—tax benefits when he claims will not, in fact, be realized. In its memorandum opinion, the district court rejected duPont III's account of the Trust's purpose, holding that the tax benefits of the Trust were incidental to its creation. *DuPont*, 575 F.Supp. at 861. It found instead that the Trust was created (1) to prevent duPont III's then-wife, Joanne duPont, from obtaining his property in the event of a di-

vorce; and (2) to provide for his son, duPont IV, on an economic level equal to that which had already been provided to his children by previous marriages. *Id.* at 854. On appeal, duPont III argues that these findings are clearly erroneous.[8]

The testimony before the trial court was conflicting with regard to the purpose of the Trust. On the one hand, duPont III testified that he established the Trust both to provide for his son and to minimize the tax liability of his estate. 7 Rec. at 11–13, 21, 101. He claimed that he would not have formed the Trust if he knew then what he knows now about its tax consequences. *Id.* at 15, 18, 21, 40. On the other hand, Edward Brady—duPont III's lawyer when the Trust was formed as well as his close personal friend and advisor—testified that duPont III established the Trust to keep his property from his wife and that tax considerations were irrelevant. 10 Rec. at 24–26. It was the responsibility of the district court to evaluate the credibility of these witnesses and to weigh their conflicting testimony. The district court chose to accept Brady's version, which it found "clear and convincing," *DuPont*, 575 F.Supp. at 854, and which it noted was supported (1) by a memorandum written at the time by one of duPont III's other lawyers, (2) by the fact that duPont transferred to the Trust a substantial number of assets with a nominal asset value but a high personal value, such as a soup tureen and plates; and (3) by the fact that although duPont III was apprised of the true tax consequences of the Trust in 1977, he did not seek to rescind the Trust but instead continued to rely on its validity, particularly during his divorce proceedings with Joanne duPont. *Id.* at 854–55. Given this evidence, we are not left with the "definite and firm conviction that a mistake

has been committed," *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), and therefore uphold the district court's finding regarding the purpose of the Trust.[9]

 DuPont III argues additionally that the Trust should be rescinded or modified on the ground of improvidence. With impressive chutzpah, he claims that he has put himself in a difficult financial position by being overly generous and that we should regard his plight in a "benign spirit." Brief for Cross-Appellant at 34. Although this argument is less audacious than that of the father who, after murdering his son, claims that the purpose of the son's trust has been frustrated, we are unable to summon much benignity on duPont III's behalf. DuPont III points to no Texas cases where an irrevocable trust has been rescinded or modified on the ground of improvidence. Moreover, although he asserted in his pleadings that the Trust should be rescinded because of improvidence, he testified at trial that he was not trying to break the Trust because of financial straits. 7 Rec. at 136. Given his current income of approximately one million dollars per year, *id.* at 135, we would tend to agree. We therefore do not believe that duPont III is entitled to this type of equitable relief.

 Finally, duPont III argues that the Trust should be rescinded because the Trustees, in advising him to establish the Trust, made inadequate disclosures of the effects of the Trust and abused their confidential relationship. In particular, duPont III claims that his attorney, Edward Brady, engaged in self-dealing by influencing him to form a trust from which Brady, as trustee, receives substantial fees. Because this

---

8. Although duPont III discusses at length the law governing rescission of a Trust for mistake and frustration of purpose, he does not point to any errors in the test applied by the district court. Instead, duPont III argues that the district court's legal analysis was erroneous only in that it failed to consider his improvidence and fiduciary duty arguments. *See* Brief for Cross-Appellant at 39.

9. Because we agree with the district court that the Trust was not induced by a mistake, we need not consider the alternative rationale of the district court that duPont III's suit is premature since taxes have not yet been assessed on the Trust. *See DuPont*, 575 F.Supp. at 861 n. 5.

argument was not made to the court below, we do not consider it here. *See Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1117 n. 20 (5th Cir.1985).

## B

DuPont III also seeks to remove the Trustees on the ground of hostility. Although the Trust instrument does not contain any provision for the removal of the Trustees, Section 39 of the Texas Trust Act, Tex.Rev.Civ.Stat.Ann. art. 7425b–39 (Vernon 1960) [10] provides that, on the petition of an interested person, a court may remove

> [t]rustees having materially violated (or attempted to violate) any express trust resulting in an actual financial loss to the trust, or becoming incompetent or insolvent, ... or for other cause, in the discretion of the court having jurisdiction.

DuPont III contends that the district court erred in not exercising its authority to remove the Trustees, since, as a result of this lawsuit, relations have deteriorated between duPont and the Trustees.

The Texas Supreme Court recently had occasion to interpret Article 7425b–39 in *Akin v. Dahl*, 661 S.W.2d 911 (Tex.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). There, several beneficiaries of a discretionary trust brought suit to remove the trustee, claiming that he was hostile to their interest because of their previous guardianship and incompetency proceedings against him. The Supreme Court affirmed the court of appeals's reversal of the district court judgment removing the trustee. The court held that, in order to remove a trustee for hostility, the factfinder must make an affirmative finding that the trustee cannot properly perform his duties. *Id.* at 914. Since the jury had found only that there was a "probability" that the trustee's hostility would affect his performance as trustee, the Court held that removal was unwarranted. In support of this conclusion, the Court noted that the hostility was created by the beneficiaries, and stated, "[T]his Court will not sanction the creation of hostility by a beneficiary in order to effectuate the removal of a trustee." *Id.*

In the present case, the facts are substantially less convincing on the issue of hostility than in *Akin,* where the Texas Supreme Court held that removal was unwarranted. In *Akin,* the trustee's daughter and son-in-law, both of whom were beneficiaries of the trust, had sought to commit the trustee involuntarily in a hospital for incompetency, and the trustee had successfully brought a malicious prosecution suit in response. 661 S.W.2d at 919. Here, in contrast, the purported hostility arose merely from duPont's suit to rescind the Trust.

 After hearing duPont III's evidence, the trial court found as a fact that there was no hostility between duPont III and the Trustees, *DuPont,* 575 F.Supp. at 856 (Finding of Fact 23), and therefore declined to remove the Trustees. We are unable to say that the court's conclusion is clearly erroneous. DuPont III presented little direct evidence at trial of hostility. Instead, he attempted to infer the existence of hostility from the actions of the Trustees in paying litigation expenses from the income rather than the principal of the Trust, and in charging excessive trustee fees. The district court was in the best position to evaluate this evidence and to determine whether it demonstrated hostility. Moreover, in the present case as in *Akin,* the hostility that exists was created primarily by the beneficiary, through his attempt to invalidate the Trust. In conformity with *Akin,* we "will not sanction the creation of hostility by a beneficiary in

---

10. Although the Texas Trust Act was repealed in 1983 by the enactment of the Texas Trust Code, the Act generally continues to govern the Trust in question here, which was established in 1972. Texas Trust Code § 111.006 (Vernon 1984). To the extent that the newly enacted Code applies to duPont III's specific claim for removal of the Trustees, which may be based in part on transactions occurring after the Code took effect on January 1, 1984, the Code provision (§ 113.082) that replaced Art. 7425b–39 is in all material respects identical to Art. 7425b–39. Therefore, decisions construing Art. 7425b–39 remain authoritative.

order to effectuate the removal of a trustee." *Id.* at 914. We therefore affirm the district court's denial of duPont III's request to remove the Trustees.[11]

## C

■■■ DuPont III next questions the district court's ruling that the Trustees may charge all of their litigation expenses—including their attorney fees—to the Trust. Generally, a trustee is entitled to reimbursement from the trust estate for expenses "which the trustee, acting reasonably and in good faith, incurs in defense of litigation charging him with a breach of trust." *Grey v. First National Bank,* 393 F.2d 371, 387 (5th Cir.) (applying Texas law), *cert. denied,* 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968). DuPont III claims, however, that we should not apply this rule, since the expenses incurred by the Trustees—and Brady in particular—were for the benefit of the Trustees individually rather than for the benefit of the Trust estate. According to duPont III, Brady was interested primarily in defending himself against allegations of negligence and breach of fiduciary duty. Moreover, duPont III argues that the litigation expenses incurred by the Trustees were duplicative and excessive, since the Trustees had identical interests yet employed separate counsel.

■■■ The district court, after carefully considering these arguments, found that the Trustees' decision to retain separate counsel was "prudent and reasonable," and that there was "no evidence in the record to support a claim that the expenses were duplicative or unrelated to the maintenance of the Trust." *DuPont,* 575 F.Supp. at 856

(Finding of Fact 25). The court also found that "there is no evidence other than duPont III's conjecture that legal fees paid to counsel to defend Brady against future litigation were incurred in bad faith or for a purpose other than for the benefit of the Trust." *Id.* at 864 (Conclusion of Law 24). In contesting these findings, duPont III points to no evidence in support of his claim; instead, he merely repeats his conclusory assertions that the retention of separate counsel was duplicative and that Brady's legal fees were incurred to defend Brady against personal liability for mismanagement and malfeasance. The district court was in the best position to judge whether the legal fees of the Trustees were incurred reasonably and in good faith, or whether they were duplicative and for the benefit of the Trustees personally. We therefore defer to its conclusion that the Trustees' attorney fees were properly chargeable to the Trust.

## D

Finally, duPont III argues that the district court erred in allowing the Trustees to allocate their litigation expenses to the income of the Trust. Under the terms of the Trust, the Trustees have discretion in determining whether to charge expenditures to Trust income or principal. Trust Agreement, Part V(A). However, the Trust also provides that "[w]hen a Trustee is empowered to exercise his judgment or discretion, it shall be exercised reasonably and in good faith with a view toward assuring to the successive beneficiaries full enjoyment of their respective interests and not for the purpose of arbitrarily favoring one over the other." *Id.* at IV(D). DuPont III ar-

---

**11.** In a belated effort to bypass the district court's finding that no hostility exists between duPont III and the Trustees, duPont III argues for the first time in his reply brief that removal is warranted due to the Trustees' mismanagement of Trust assets, regardless of the existence of hostility. Even were we to consider this untimely argument, however, our conclusion would remain the same. In *Brault v. Bigham,* 493 S.W.2d 576 (Tex.Civ.App.—Waco [10th Dist.] 1973, writ ref'd n.r.e.), on which duPont III relies, the trustee had attempted to appropri-

ate the assets of the trust for her own use, and the district court ordered her removal. The court of civil appeals, applying the extremely deferential abuse-of-discretion standard, affirmed. *Id.* at 579. Here, in contrast, duPont III alleges merely that the Trustees mismanaged the assets of the Trust, not that they repudiated the Trust by attempting to appropriate its assets. Nothing in *Brault* indicates that a district court decision refusing to remove the trustees, in this situation, is erroneous.

gues that the Trustees violated this provision by paying litigation expenses from the income rather than from the principal of the Trust, since this allocation arbitrarily favored duPont IV, the remainderman, over duPont III, the current income beneficiary.

 Because the Trust instrument does not contain explicit rules for allocating expenses between income and principal, but instead leaves allocations to the discretion of the Trustees, we review the Trustees' actions only for an abuse of discretion. *See Beaty v. Bales*, 677 S.W.2d 750, 754 (Tex.App.—San Antonio [4th Dist.] 1984, writ ref'd n.r.e.).[12]

 Generally, litigation expenses to protect a trust are considered to be extraordinary expenses and should be paid out of trust principal. Restatement, *supra* note 12, § 233 comment g; 3 A. Scott, *supra* note 12, § 233.3 at 1917–18. However, an exception exists when litigation expenses are caused by or are principally for the benefit of the income beneficiary. *Brisacher v. Tracy-Collins Trust Co.*, 277 F.2d 519, 524 (10th Cir.1960); *Cleveland v. Second National Bank & Trust Co.*, 149 F.2d 466, 470 (6th Cir.), *cert. denied*, 326 U.S. 775, 66 S.Ct. 231, 90 L.Ed. 468 (1945);

Annotation, 124 A.L.R. 1183, 1186–87, 1194 (1940); *cf.* G. Bogert, *Law of Trusts and Trustees* § 802 (rev. 2d ed. 1981) (in exercising discretion to allocate expenses, trustee should take account of cause of expenses). This exception is explicitly recognized by the Texas Trust Act, which states that "attorney's fees and other costs incurred in maintaining or defending any action to protect the trust or the property or assure the title thereof, *unless due to the fault or cause of the tenant,*[13] ... shall be paid out of principal." Tex.Rev.Civ.Stat. Ann. art. 7425b–36 (Vernon 1960 & Supp. 1982–1983) (emphasis added).[14]

 Based upon this last-cited Texas statutory provision, the district court found that the Trustees' allocation of litigation expenses between the corpus and the income account was proper. We, like the district court, are unable to find any reason suggested by the record that the Trustees abused their trust-entrusted discretion by paying litigation expenses from the income (of which duPont III was trust beneficiary) rather than from the principal of the trust (of which duPont IV was the principal beneficiary). Under the cited Texas statute, litigation expenses could be charged to in-

---

12. Although the Trust instrument states that the Trustees must exercise their discretion reasonably and in good faith, without arbitrarily favoring one beneficiary over another, Trust Agreement IV(D), this merely makes explicit the equitable principles that would ordinarily be used to evaluate the Trustees' discretionary actions. Whenever discretion is conferred upon a trustee, the trustee must act within the bounds of "a reasonable judgment," Restatement (Second) of Trusts § 187 comment i (1959); 3 A. Scott, *The Law of Trusts* § 187.2 (3d ed. 1967), and has a duty to deal impartially with the beneficiaries of the trust, Restatement, *supra*, §§ 183, 232; 3 A. Scott, *supra*, § 232. Thus, in the present case, the Trust instrument does not alter the standard that we would otherwise use to review the exercise of discretionary power by a trustee.

13. The Texas Trust Act defines "tenant" as "the person to whom income is presently or currently payable." Tex.Rev.Civ.Stat.Ann. art. 7425b–4(H).

14. Although Art. 7425b was repealed in 1983 when the Texas Trust Code was enacted, *see*

note 10 *supra*, it applies to all transactions—including payments of litigation expenses—occurring prior to January 1, 1984. Texas Trust Code § 111.006 (Vernon 1984).

DuPont III argues that Art. 7425b–36 is inapplicable, since the Trust instrument itself specifies how Trust expenses should be allocated. However, the Trust instrument merely invests the Trustees with discretion to allocate expenses between income and principal, and states that this discretion must be exercised reasonably, without favoring one beneficiary over another; it does not contain any specific requirements that supersede the principles enumerated in Art. 7425b–36. *Cf.* note 12 *supra*. The question presented by duPont III's claim regarding the allocation of litigation expenses is whether the Trustees exercised their discretion reasonably. In the absence of evidence of the settlor's intent regarding how this discretion should be exercised, we must rely on general principles of what constitutes a reasonable exercise of discretion, including the principles enumerated in Art. 7425b–36 of the Texas Trust Act, which we regard as dispositive of Texas's policy on this question.

come rather than principal when resulting from "the fault or cause" of duPont III.

No reason is shown that the Trustees' exercise of their discretion arbitrarily favored duPont IV or that the Trustees did not act reasonably and in good faith to assure to the successive beneficiaries the full enjoyment of their respective interests, by their determination that the litigation expenses caused by duPont III's belated and essentially meritless attack upon the Trust he had created should be charged to his income interest rather than to the principal, of which duPont IV was the principal beneficiary.

## IV

Robert Benchley once remarked that "there are several ways in which to apportion the family income, all of them unsatisfactory."[15] DuPont III seems to have learned this lesson the hard way. Having made one disposition of his property to shield it from his former wife, he now seeks a different result. We agree with the district court that duPont III has not justified revoking or reforming the Trust, which by its terms is irrevocable. We also uphold the district court's findings that duPont III failed to show either that removal of the Trustees is warranted due to hostility, or that the litigation expenses of the Trustees should not have been paid by the Trust, and the district court's finding that the Trustees did not abuse their discretion by allocating the litigation expenses to the income rather than the principal of the Trust.

We also remand to the district court the question of whether Nemours Plantation and Harridge House were effectively transferred to the Trust. A fundamental aspect of due process is the right to be heard. Rendering judgment based only on the evidence of one party offends a litigant's most precious constitutional rights. Here, the district court in effect denied the appellants an opportunity to present their evidence, by

initially granting the appellants' motion to dismiss but later ruling against the appellants with regard to a substantial issue in the case. This violated Rule 41(b) and denied the appellants due process.

Finally, we order the district court, on remand, to determine appropriate guardian and attorney ad litem fees for duPont IV.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

---

15. We might add that when there is so much money to go around, many families might welcome the duPonts' state of dissatisfaction.