James A. SNOOK, Kay Sessoms Hinson and Betty S. Prevatt, Plaintiffs–Appellants,

v.

TRUST COMPANY OF GEORGIA BANK OF SAVANNAH, N.A., Alexander Sessoms and Raymond Johnson, Co–Trustees u/a Alex K. Sessoms and Edna S. Sessoms; Alexander Sessoms, Individually and as an Officer and Director of Timber Products Company; and Donald R. Correll, Individually and as Vice President and Trust Officer of Trust Company of Georgia Bank of Savannah, N.A., Defendants–Appellees.

No. 89–8412.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1990.

R.M. Guttshall, III, A.P. Guttshall, Houston, Tex., for plaintiffs-appellants.

John McTier, Valdosta, Ga., John B. Miller, Savannah, Ga., William U. Norwood, III, Alexander & Vann, Thomasville, Ga., for defendants-appellees.

Before JOHNSON, Circuit Judge, HILL * and HENLEY **, Senior Circuit Judges.

HENLEY, Senior Circuit Judge:

This case between trust beneficiaries and trustees is before this circuit for the second time. In *Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865 (11th Cir.1988) [hereinafter *Snook I*], the court reversed the district court's [1] order granting summary judgment in favor of the defendants-trustees and remanded for further proceedings. The *Snook I* panel also noted that the district court had denied the plaintiffs' motion for a preliminary injunction enjoining the trustees from using trust income to pay their attorney's fees during the course of this case and related litigation, but declined to reverse that ruling because the plaintiffs had filed a new motion for similar injunctive relief subsequent to the district court's denial order. *See* 859 F.2d at 872. On remand the district court again denied the plaintiffs' motion to enjoin the trustees' payment of at-

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. The Honorable J. Robert Elliott, United States District Judge, Middle District of Georgia.

torney's fees from trust income. The latter order is the subject of the present appeal. We affirm.

## I.

We assume familiarity with the facts of *Snook I* and will only summarize those facts while giving additional information relevant for this appeal. The plaintiffs— James A. Snook, Kay Sessoms Hinson and Betty S. Prevatt—are beneficiaries under trust indentures created by Alex K. Sessoms ("AKS Trust") and Edna S. Sessoms ("ESS Trust"). Since 1985 the plaintiffs have been in litigation with the trustees of the AKS and ESS Trusts concerning the tax consequences of the trustees' 1984 liquidation of Timber Products Company ("TPC"), of which the AKS Trust was the principal shareholder and the plaintiffs were among the minority shareholders.

The plaintiffs originally brought suit in the Superior Court of Chatham County, Georgia, alleging that the manner in which trustees liquidated TPC was in breach of their fiduciary duties and in contravention of the AKS Trust terms, trust accounting principles and federal tax law. In response the trustees filed a declaratory judgment action against Snook, Hinson and Sessoms in the Superior Court of Clinch County, Georgia, charging that the beneficiaries had violated the AKS Trust *in terrorem* clause by attempting to change the trust terms through the Chatham County litigation. The Clinch County Superior Court agreed with the trustees and held that the beneficiaries had contravened the *in terrorem* clause and thereby had extinguished their right to future trust income. The Georgia Supreme Court reversed the Clinch County Superior Court, however, determining that the beneficiaries had not violated the *in terrorem* clause because "their complaints are directed against the trustees,

and did not constitute an attempt to change any terms of the trust." *Snook v. Sessoms*, 256 Ga. 482, 350 S.E.2d 237, 238 (1986). Later the plaintiffs voluntarily dismissed the Chatham County lawsuit and filed their complaint in the instant action, alleging violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988); rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1989); the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1988); as well as pendent state law claims generally alleging that the trustees violated the AKS trust terms and breached their fiduciary duties.

The plaintiffs assert that the trustees have used AKS Trust income without prior judicial authorization to pay their attorney's fees in the Chatham County, Clinch County, and current federal litigation, as well as in tax litigation relating to the TPC liquidation.[2] The plaintiffs contend that the trustees' use of trust funds to pay attorney's fees in all of this litigation is not permitted under either the terms of the AKS and ESS Trusts or Georgia law unless the trustees have first demonstrated to a court that the plaintiff's charges are unfounded. The plaintiffs filed a motion with the district court for the following equitable relief: (1) to enjoin the trustees from using income from either the AKS Trust or the ESS Trust to pay attorney expenses in the present case until the trustees have demonstrated their innocence of any wrongdoing by prevailing on the merits; (2) to require the trustees to return to the AKS Trust all income taken thus far to pay their attorney expenses in this case and the other litigation noted above; and (3) to order the trustees to distribute to the AKS Trust beneficiaries the income returned by the trustees.

**2.** In support of their motion for injunctive relief, the plaintiffs offered a letter from the trustees dated December 23, 1985, which informed the AKS Trust beneficiaries that the trustees were using approximately $100,000.00 of trust income for legal and accounting expenses in defending the Chatham County lawsuit; and accounting statements of the AKS Trust that,

according to the plaintiffs, show expenditures of trust income for attorneys' fees of $16,818.93 in 1985, $89,465.79 in 1986, $24,049.84 in 1987, and $55,459.87 in 1988. The district court did not make any findings concerning the amount of AKS Trust income used for attorney's fees or which litigation that trust income has been used to finance.

In denying the plaintiffs' motion, the district court commented that it "need not determine whether the [t]rustees have exceeded the limits of discretion granted by the trust indentures" by using trust income to pay their attorney's fees, but added that it was not "convinced under the record of this case that the law requires the [t]rustees to obtain prior approval from either the Probate Court or the Superior Court for the payment of attorney's fees from trust funds as the litigation progresses." The district court appeared to base its ruling on the plaintiffs' failure to demonstrate "that the periodic payment of attorney's fees by the [t]rustees from trust funds will irreparably injure the [p]laintiffs," and concluded that "[t]he ultimate question of who pays the fees of attorneys representing the parties must await the final adjudication on the merits of the case."

## II.

■ We will not reverse the district court's denial of a preliminary injunction unless there was a clear abuse of discretion. *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir.1989), *cert. granted,* — U.S. —, 110 S.Ct. 2584, 110 L.Ed.2d 265 (1990). In reviewing the denial order, we keep in mind the following criteria for obtaining preliminary injunctive relief:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a showing that plaintiff will suffer irreparable injury if an injunction does not issue, (3) proof that the threatened injury to plaintiff outweighs any harm that might result to the defendants, and (4) a showing that the public interest will not be dis-

served by grant of a preliminary injunction.

*Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir.1990) [hereinafter *Northeastern Fla. Chapter*].[3] We are aware that "[t]he preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites. 'The burden of persuasion in all of the four requirements is at all times upon the plaintiff.'" *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir.1983) (quoting *Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974)); *accord Northeastern Fla. Chapter*, 896 F.2d at 1285.

### A.

We first address the question whether the plaintiffs have shown a substantial likelihood of success on the merits of their argument. Their argument is that the trustees do not have authority to use trust income to pay their attorney's expenses in this case and other litigation related to the TPC liquidation unless the trustees have first demonstrated to a court that the plaintiffs' charges of trust mismanagement are without merit.

■ The general rule is that a trustee may use trust funds to pay for all expenses, including attorney's fees, that are properly incurred for the administration of the trust. *See* Restatement (Second) of Trusts § 244 (1959); *see also* G. Bogert & G. Bogert, *The Law of Trusts and Trustees* § 801, at 133 (1981) ("[T]he trustee has

---

**3.** Other circuits have followed what has been called an "alternative test" for issuing preliminary injunctions. This alternative formulation provides that injunctive relief is justified

> 'upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting preliminary relief.'

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir.1981) (en banc) (quoting *Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert.*

*denied*, 437 U.S. 906, 98 S.Ct. 3093, 57 L.Ed.2d 1136 (1978) (emphasis in original)); *see id.* at 112 n. 3 (citing cases from D.C., Second and Ninth Circuits recognizing alternative test). The alternative test has not been recognized in the Eleventh Circuit or Georgia state courts. The Eighth Circuit, sitting en banc, has held that even under the alternative test, a court should nevertheless consider the four traditional factors of irreparable harm, balance of harm between the parties, probability of success on the merits, and the public interest in determining whether to issue a preliminary injunction. *See id.* at 113.

the power and duty to pay from some trust property such expenses as are necessary to enable him to perform the duties placed upon him by the trust instrument, court order, or by statute."). An expense is properly incurred if it is either (1) "necessary or appropriate to carry out the purposes of the trust and not forbidden by the terms of the trust," or (2) "authorized by the terms of the trust." Restatement (Second) of Trusts § 188 (1959). The trustee may charge the trust estate for properly incurred expenses in one of two ways—either by personally bearing the expense and then obtaining reimbursement from the trust, or by using trust funds to pay the expense directly, a procedure known as exoneration. *See* 76 Am.Jur.2d *Trusts* § 523, at 742 (1975); Restatement (Second) of Trusts § 244 comment b (1959).

■ The Georgia Code rephrases the principles stated above as follows: "Trustees are authorized, out of the income of the estate, to pay all debts incurred for its protection and preservation.... They may not encroach upon the corpus of the estate, except by order of the superior court." Ga.Code Ann. § 53-13-52 (1982). The implication of this statutory provision is that although a trustee must obtain judicial authorization for using trust principal to pay

trust expenses, the trustee need not have court approval before obtaining reimbursement or exoneration from trust income for expenses, provided that those expenses were incurred for the protection and preservation of the trust estate.

Turning to the terms of the AKS and ESS Trusts, we find that they generally authorize the use of trust funds to pay attorney expenses within the context of the trustees' administration, preservation and protection of trust property [4]—language that appears only to restate the principles contained in the Restatement and the Georgia Code. Thus, whether we apply the wording of the Restatement, Georgia Code, or the trust indentures themselves, the operative rule is that the trustees' use of trust funds for attorney's fees is authorized only if such expenditure is necessary for the administration, protection or preservation of the trust estate.

The plaintiffs contend that the trustees' attorney expenses in this case and related litigation have not been incurred for the administration, protection or preservation of the trust estate. Rather, the plaintiffs argue, the trustees' attorney expenses have been incurred solely for the benefit of the trustees because the expenses resulted

---

4. The AKS Trust mentions attorney expenses in sections eleven and twenty-three. Section eleven provides, in pertinent part, that "[t]he Trustees may contract for the labor or services of such agents, attorneys and employees as they deem necessary and pay to them such compensation as they consider reasonable." Section twenty-three provides, in pertinent part, that

[w]hen no income is presently available, the Trustees may pay out of the principal of the trust estate, whenever in their discretion they deem it necessary or advisable, ... attorney's fees, expenses and liabilities of every kind expended or incurred in the collection, foreclosure, care, repair, holding, maintenance, administration, protection, acquisition or distribution of the trust income and of the trust estate, for the payment of which the trust estate, or the Trustees, may become chargeable, including the defense of this trust indenture against legal attack, and also including compensation for the Trustees' services, as hereinafter provided.

When read by itself, section eleven might be construed to give the trustees virtually unlimited discretion to employ attorneys using trust funds. However, we interpret trust terms not in isolation but rather within the context of the entire trust instrument. *See Love v. Fulton Nat'l Bank of Atlanta,* 213 Ga. 887, 102 S.E.2d 488, 491 (1958) ("The intention of the settlor [of a trust] is to be determined from the whole instrument and not from isolated portions or statements contained therein."). Section twenty-three discusses payment of attorney's fees with trust funds only within the context of administering, protecting or preserving the trust estate. Therefore we conclude that the authority delegated to the trustees by section eleven to employ attorneys is limited by the requirement that the employment be for the general purpose of administering, protecting, or preserving the trust estate.

Section twenty-three of the ESS Trust also empowers the trustees to employ attorneys when that employment is for the purpose of administering and protecting the trust: "In administering these trusts and in protecting the trusts and trust property against legal or equitable attacks, the Trustees may contract for the labor or services of such agents, attorneys, or employees as they may deem necessary and pay to them such compensation as they consider reasonable."

from the trustees' defending against charges of trust mismanagement. In support of their argument, the plaintiffs note that the Georgia Supreme Court concluded that the beneficiaries' "complaints are directed against the trustees, and [do] not constitute an attempt to change any terms of the trust." *Snook*, 350 S.E.2d at 238.

It appears from the record that much, if not all, of the trustees' attorney expenses in the present case and the Chatham and Clinch County litigation have been incurred for their personal defense against charges of improper administration of the trust, and not for defense of the trust indentures themselves from attack. However, Georgia courts have recognized that in certain circumstances a trustee is entitled to charge the trust estate for attorney expenses incurred in defending against a lawsuit brought by beneficiaries alleging that the trustee has mismanaged or misappropriated the trust estate. *See Citizens & S. Nat'l Bank v. Haskins*, 254 Ga. 131, 327 S.E.2d 192, 203–04 (1985); *Melson v. Travis*, 133 Ga. 710, 712, 66 S.E. 936, 937 (1910); *cf. Hudson v. Abercrombie*, 258 Ga. 729, 374 S.E.2d 83, 85–87 (1988) (temporary administratrix of will seeking reimbursement for fees incurred during litigation with caveator of will); *Armstrong v. Boyd*, 140 Ga. 710, 79 S.E. 780, 781 (1913) (administrator of will seeking fees from trust funds after lawsuit with legatees); *Ross v. Battle*, 113 Ga. 742, 39 S.E. 287, 288–89 (1901) (same).[5]

 The teachings of these cases may be summarized as follows. If the trustee is unsuccessful in his defense, then he is not entitled to reimbursement from trust funds for attorney's fees. *E.g., Citizens & S. Nat'l Bank*, 327 S.E.2d at 203–04; *Melson*, 133 Ga. at 712, 66 S.E. at 937. If the trustee is found to be without liability at the conclusion of the litigation, however, then he may obtain reimbursement, provided that he demonstrates to the satisfaction of the court hearing the case that the fees were "reasonably necessary and proper for the defense or protection of the trust estate." *Id.;* see also DuPont v. Southern Nat'l Bank of Houston, Texas, *575 F.Supp. 849, 863 (S.D.Tex.1983) (reimbursement for trustee's attorney's fees appropriate when litigation did not result from fault of trustee and fees "constitute 'a fair allowance for the professional work necessary to be done in the proper protection of the trustee's interest' ") (quoting* In re Delamater's Estate, *51 N.Y.S.2d 399, 400 (1944)),* modified, *771 F.2d 874 (5th Cir. 1985),* cert. denied, *475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986).*

Although the above-cited cases do not directly address the question at issue here (that is, whether a trustee may charge the trust estate for attorney's fees *during* the course of litigation with beneficiaries), the reasoning of those cases is instructive. Those cases appear to have sanctioned the payment of attorney expenses with trust funds *not* because the trustee was entitled to charge the trust for those expenses as a matter of right. Rather, the use of trust funds for attorney expenses was warranted because the trustees were not at fault in the litigation and the amount of attorney expenses was reasonable.

Courts that have allowed innocent trustees to be reimbursed from trust funds for attorney's fees have reasoned that such reimbursement is necessary for the administration, protection and preservation of the trust estate because it effectuates the settlor's intent. As Judge Learned Hand once wrote,

a trustee was appointed to administer the assets; the settlor selected him to do so, and whatever interferes with his discharge of his duty *pro tanto* defeats the settlor's purpose. When the trustee's administration of the assets is unjustifiedly assailed[,] it is a part of his duty to defend himself, for in so doing he is realizing the settlor's purpose. To com-

---

5. For cases in other jurisdictions, see, for example, *DuPont v. Southern Nat'l Bank of Houston, Tex.,* 771 F.2d 874, 886 (5th Cir.1985) (Texas law), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986); *Grey v. First Nat'l Bank in Dallas,* 393 F.2d 371, 387–88 (5th Cir.) (Texas law), *cert. denied,* 393 U.S. 961, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968); *Weidlich v. Comley,* 267 F.2d 133 (2d Cir.1959) (New York law).

pel him to bear the expense of an unsuccessful attack would be to diminish the compensation to which he is entitled and which was a part of the inducement of his acceptance of the burden of his duties.

*Weidlich v. Comley,* 267 F.2d 133, 134 (2d Cir.1959). In the present case, by contrast, it does not appear that the settlors' intent is furthered by allowing the trustees to charge the trust for attorney expenses before they have demonstrated to a court that they are not at fault and that the expenses are reasonable. To conclude otherwise would be to say, in effect, that the settlors intended for the trustees to have their attorney expenses paid by trust funds in *all* litigation, even when the trustees are guilty of maladministration and have incurred attorney expenses in clearly unreasonable amounts.

Thus, we conclude that the plaintiffs are substantially likely to prevail on the merits of their claim that the trustees have no authority absent prior judicial authorization to use trust funds to pay their attorney's fees in the present case, and in the Chatham and Clinch County litigation.[6]

### B.

Notwithstanding our determination that the plaintiffs have demonstrated substantial likelihood of success on the merits, we do not believe that the district court abused its discretion in denying injunctive relief. "The plaintiff's 'success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm.'" *Northeastern Fla. Chapter,* 896 F.2d at 1285 (quoting *United States v. Lambert,* 695 F.2d 536, 540 (11th Cir.1983)). We conclude that the district court reasonably could have determined that plaintiffs had not met their burden of showing irreparable injury.

The plaintiffs will have an adequate remedy at the end of this case for any improper payment of attorney's fees by the trustees from trust funds. If the plaintiffs prevail in this lawsuit, then they will have an equitable claim against the trustees for reimbursement to the trusts of all funds used to pay the trustees' attorney's fees. The trustees' failure to defend successfully against the plaintiffs' charges would conclusively demonstrate that the trust funds expended for the trustees' attorney's fees were used by the trustees for their own purposes rather than for the benefit of the trusts. This expenditure would constitute a breach of the trustees' duty of loyalty to the beneficiaries. *See generally Hanson v. First State Bank & Trust Co.,* 259 Ga. 710, 385 S.E.2d 266, 267 (1989) (noting that a trustee "owes an undivided duty [of loyalty] to the beneficiary, and must not place himself in a position where his personal interest will conflict with the interest of the beneficiary"); Restatement (Second) of Trusts § 170 comment 1, at 369 (1959) (noting that "[t]he trustee violates his duty [of loyalty] to the beneficiary ... [when] he uses the trust property for his own purposes"). The trustees would have also committed a breach of trust. *See id.* § 201. Having committed these breaches, the trustees would be chargeable in equity for the loss in value of the trust estate resulting from their use of trust funds to finance their attorney's expense. *See id.* §§ 205(a), 206. The trustees also would be liable for payment of interest on the returned trust funds. *See id.* § 207. Once the trustees had reimbursed the trusts for the misappropriated funds and interest, the plaintiffs would then have both legal and equitable claims to distribution of the returned monies. *See id.* § 198(1) comment b & illustrations 2, 3, 4 (noting that trust income beneficiary has legal remedy for payment of trust income that has been misappropri-

---

**6.** We are not prepared, however, to make a similar finding with regard to the trustees' use of trust funds to pay their attorney expenses in the tax court litigation. According to the plaintiffs, this litigation involves a dispute between the Internal Revenue Service and trustees over whether the AKS Trust is a simple or a complex trust for tax purposes. Although the trustees may be at fault in causing the tax court litigation, we do not believe the plaintiffs have sufficiently explained the details of this litigation for us to render an informed decision on whether the trustees may use trust funds to pay attorney's fees for this litigation.

ated by the trustee); *id.* § 199(a) (noting that beneficiary has equitable remedy to compel trustee to perform his duties as trustee).

■ Even if the plaintiffs are not completely successful in this litigation, they still might have a claim for return of some of the trust income used to finance the trustees' attorney expenses. Depending upon the particular facts of this litigation, the district court would have discretion to order the trustees to reimburse the trust for attorney's expenses that the trustees did not demonstrate were "reasonably necessary and proper" for the defense. *See Melson,* 66 S.E. at 937; *DuPont,* 575 F.Supp. at 863. *See generally* G. Bogert & G. Bogert, *The Law of Trusts and Trustees* § 809 (1981) (discussing factors to be considered by a court in awarding attorney's fees to trustee).

Although it is clear that the plaintiffs will eventually be able to receive any trust income misappropriated by the trustees for their attorney's fees, the question remains whether the plaintiffs are irreparably injured by not having access to this income during the pendency of the litigation.

The plaintiffs hold the occupations of bank equipment repairman, elementary school teacher and homemaker. In his affidavit, James Snook asserts that the plaintiffs would suffer irreparable harm because they rely upon trust income to pay their living expenses as well as the costs of the present litigation. The plaintiffs did not present, however, any documentation of their net worth. Even though they may have relatively low-paying jobs, the plaintiffs may have significant wealth or alternative sources of income. The plaintiffs' failure to document Mr. Snook's assertion of financial hardship supports a finding of no irreparable harm. Even if denial of injunctive relief would present some monetary injury to the plaintiffs, we are reluctant to conclude that the district court abused its discretion in not finding *irreparable* injury:

> 'Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough [to constitute irreparable injury]. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.'

*Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958)).

The plaintiffs also claim that because the trustees are not using their own money to pay their attorney's fees, the trustees are unrestrained in their ability to expand and prolong the litigation with the plaintiffs. We disagree. The trustees undoubtedly are aware of the possibility of not prevailing in this litigation. If the trustees lose on the merits of some or all of the underlying claims, they will be required to reimburse the trusts for funds taken to finance their unsuccessful defense and to distribute those funds to the beneficiaries. Thus, the trustees' litigation expenses are constrained by the prospect that the trustees may, in fact, have to pay those expenses at the conclusion of this case.

Having determined that the district court acted within its discretion in finding no irreparable injury, we need not address the balance of harm between the plaintiffs and the trustees or whether the public interest would be disserved by a grant of injunctive relief. *See Northeastern Fla. Chapter,* 896 F.2d at 1285 (noting that court need not address each element of preliminary injunction standard because no showing of irreparable injury was made).

### III.

We conclude that the district court did not abuse its discretion in denying the plaintiffs' motion for a preliminary injunction. The district court's order is AFFIRMED.